Green *vs.* Caulk.

*Decree affirmed.*

(Decided February 5th, 1861.)

## Matilda E. Green *vs.* Daniel Caulk.

A witness cannot be asked as to the correctness of the charges in a bill not made out by himself, and which there is no evidence to show that he ever saw before the trial, and as to the time of making out of which there is no evidence, and in regard to all the items of which he has not, after examining it, a recollection.

It is now held that the memorandum need not be made by the witness, but if made at or about the time of the occurrences, and the witness from having then seen and recognized it as containing the truth, of which, at the trial, he is still convinced, he may be examined in regard to it.

But where the witness neither recollects the fact, nor remembers to have recognized the written statement as true, and the writing was not made by him, his testimony, so far as founded on the written paper, is but *hearsay,* and he can be no more permitted to give evidence of his inference from what a third person has *written* than from what such person has *said.*

A witness (a measurer of mechanical work) cannot be permitted to rely upon a bill of particulars, which was a copy from the statements in his *abstract book,* which latter, with the results of the calculations extended, was taken from his *dimension book;* such paper is a copy of a copy of an original.

The memorandum is inadmissible even if it be a copy made by the *witness himself* from his *own original memoranda.*

A witness, neither a manufacturer of, nor dealer in, hardware, cannot give evidence, of the value of items in a hardware bill, based upon *information* derived from buyers and sellers of such articles; such evidence is not the *best* which the nature of the case admitted, and is therefore but *hearsay.*

In such a case the value of the articles could have been proved by the person who sold them, or, in any event, a manufacturer of, or dealer in,

such articles, should have been produced, or it should have been shown that the witness had made, *about the time*, purchases of articles of the same or a similar character.

A witness cannot be asked whether the entries of measurements and valuations in his abstract book correspond with the entries thereof in the bill of particulars, when it appears that the results of the calculations were not transferred from the abstract book to the bill, but from the latter to the former; in such a case the agreement between the two would be no proof of the accuracy of either, and especially not of the bill of particulars.

The *headings* in a measurer's Abstract Book, showing that the defendant was charged for the work measured as debtor to the *plaintiff and another*, are inadmissible as evidence for the defendant for the *purpose* of proving a *technical partnership* between the plaintiff and such other party, there being no offer to connect them with other evidence going to show the existence, at any time, of such partnership.

Where a witness has testified for the plaintiff in reference to entries of measurements in his book, the defendant may *cross-examine* the witness in reference to these entries and the *headings* of the same, for all the purposes of the defence; the *entire account*, though composed of many *items*, is, in the eye of the law, but one memorandum and one entry, and the defendant was entitled to the whole of it.

Evidence offered for a particular purpose may be properly rejected, though admissible generally, or for some other purpose.

Evidence of joint contracts made by the plaintiff and another party with other persons in 1856, is altogether inadmissible for the purpose of showing there was a *partnership* existing between the plaintiff and such other party in 1854 and 1855.

APPEAL from the Circuit court for Anne Arundel county.

*Action*, brought on the 28th of October 1857, by the appellee against the appellant to recover for work and materials done and furnished by the plaintiff to the defendant, in the repair of her house in Annapolis, during the years 1854 and 1855. Three several bills of particulars of various items were filed by the plaintiff, No. 1 for *carpenter's work*, amounting to $2195.65, No. 2 for *lumber* and *materials*, amounting to $1058.31, and No. 3 for tin roofing, amounting to $341.14, and No. 4 for *hardware* and *hauling*, amounting to $154.91. These bills state that they were "measured, estimated and valued, Oct. 11th, 1858, by William Q. Caldwell." The case was tried in January 1859.

*1st Exception.* The plaintiff proved by John Wiggins, a

journeyman carpenter employed on the work, that in 1854 and 1855, the plaintiff repaired defendant's house from cellar to garret, and did work on additional buildings erected for her, and supplied the materials therefor, and in witness' opinion the carpenter's work was worth about $2000, and the materials about $1000 exclusive of the tin work. The plaintiff then further offered to prove by Thomas A. Mitchell, that he was employed by plaintiff to do, and did, the tin roofing and spouting to the house, and furnished materials therefor, and that said work was worth more than $300. The defendant objected to witness' speaking of the value of all the tin work done, insisting that, as the plaintiff had filed a bill of particulars, he must confine his proof of value to the work described in such bill, and could not offer proof of the value of any work not specified therein. The plaintiff thereupon waived this evidence of value, and then handed to witness bill of particulars No. 3. Witness stated that the paper was not in his handwriting but in that of Caldwell, and that he identifies the work there charged as the work done by him, and measured by Caldwell, under his supervision, and being asked by plaintiff's counsel whether in his opinion the charges in that bill are fair, and what is the amount thereof, the defendant objected to the question, and, the witness, in answer to another, having said that he cannot state from his recollection, even after looking at said bill, that all the articles charged therein were furnished and the work done as charged, the defendant thereupon insisting upon her aforesaid objection, the court (BREWER, J.) decided that the question was proper and permitted it to be put, and witness, in answer thereto, stated that the charges in said bill were, in his opinion, fair, and that they amounted to $341.14. To this ruling of the court, and the evidence given under the same, the defendant excepted, and prayed the court to sign this, her first bill of exceptions, which is done, though said bill of particulars was afterwards read to the jury by defendant, as will appear by the subsequent exceptions.

*2nd Exception.* The plaintiff then called Wm. Q. Caldwell, and proved by him that he is a measurer of all kinds of mechan-

ical work; that he came to Annapolis from Baltimore last fall at the instance of Daniel M. Sprogle, to measure all the work done on defendant's house; that he found it was an old house which had been repaired, and proceeded to measure the carpenter's work in presence of plaintiff, Wiggins, and defendant, that Wiggins and plaintiff pointed out the work which had been done, and defendant objected to some portions pointed out, as not being part of the work done; witness then said he would put such work down as disputed work, but defendant objected to his putting it down at all, as it had not been done by plaintiff, and witness then said he would omit such disputed items altogether, and that said bill of particulars was not made by defendant's agreement or consent. Plaintiff's counsel then offered to witness bill of particulars No. 1, and asked him to say whether the same was a statement of his measurements and valuations of said work? Witness, having first stated that this bill was in the handwriting of his son, made out several days after witness completed the measurements, that the measurements were all set down in his *"Dimension Book,"* which was then in his possession, and handed by him to the defendant's counsel, at their request, that said bill No. 1 was made by his son from the *Abstract* which was made out partly by witness and partly by his son under his superintendence, from the *"Dimension Book,"* that he could not say that this bill was an exact copy from the *"Abstract,"* or corresponded in all particulars therewith, as the *"Abstract"* might contain errors and discrepancies, that the *"Abstract"* is now at his house in Baltimore, made out in bill form in a *book,* that he thinks that the footings in said *"Abstract,"* of the dollars and cents, were taken from the said *bill of particulars, No. 1,* and transferred to the *"Abstract,"* and afterwards said, he believed he compared said bill of particulars with the *"Abstract,"* before he left Baltimore, and found it to agree with it in substance, the defendant thereupon objected to said question being put or answered by the witness, but the court overruled this objection, and was of opinion, and so ruled, that said question might be put and answered by the witness, and it was accordingly answered by

him in the affirmative.   The witness further stated that the bill of particulars was the only perfect paper made out, and that he regarded it as the original statement; that the *"Dimension Book"* was a loose paper, requiring many calculations, which were in part made by his son, who was his clerk, and partly by himself, and all examined by him, and the results transferred to the *"Abstract,"* which was also examined by him, and copied by his son, which copy is the bill of particulars No. 1, which was also examined by him, compared with the *"Abstract,"* and found to be correct.   To which rulings of the court, and evidence so given, the defendant excepted, and prayed the court to sign this, her second bill of exceptions, which is done, although the said bill of particulars No. 1 was afterwards read to the jury by defendant, as will appear by a subsequent exception.

  *3rd Exception.* Plaintiff's counsel then handed to the witness, Caldwell, bill of particulars No. 4, and witness proved that plaintiff, in presence of defendant, stated he had furnished all the hardware for the repairs of her house, which was not denied by her, and witness made a valuation of the hardware shown to him by the plaintiff as having been so furnished, that the paper now shown witness, is in the handwriting of his son, and was made out in like manner and under like circumstances, as bill of particulars No. 1, already given in evidence, and said evidence was permitted to go to the jury, subject to the exceptions already taken to the admissibility of bill No. 1.   The plaintiff's counsel then desired witness to state, from said paper, such items therein mentioned as he remembered, but defendant objected to the question, which objection the court overruled and allowed the paper to be used by the witness to refresh his memory as to the character and quality of such items of hardware so furnished, as he remembered having measured, and the same were stated by him accordingly, to which ruling and evidence the defendant excepted, and thereupon plaintiff's counsel desired witness to look at the valuation of the several items of hardware, as stated in said paper, and to say what were the reasonable values of the several particulars included

in said bill from his own knowledge and not from said paper alone, the defendant thereupon objected, but the court overruled the objection and permitted the witness to inspect the several values of said particulars as stated in said bill, to which ruling the defendant excepted, and thereupon the witness, having inspected said paper, proceeded to state what were the values of the several articles of hardware so furnished, and, amongst others, stated that nails in 1854 and 1855, were worth about $6 per hundred. The witness stated further, that it was his habit, at the time of making his measurements and valuations, to make inquiries as to the value of the materials furnished which he was required to measure and value, of persons supposed by him to be competent to give him information on the subject, and who were in the habit of buying and selling the same, and that at the time of making the appraisement in question, he did make inquiries as to what was the value of nails at the time they were so furnished, and that his valuation thereof, and his present evidence, are based upon information so obtained. To the admissibility of which evidence the defendant objected, but the court overruled the objection and permitted the said evidence to be given to the jury, and it was given accordingly. To which ruling and evidence the defendant excepted, and prayed the court to sign and seal this her third bill or exceptions, which was accordingly done.

*4th Exception.* The plaintiff then placed in the hands of the witness, Caldwell, a book, which witness then identified as his "*Abstract Book,*" of which he had spoken in his evidence already given, and asked witness whether the entries in that book, in reference to his measurements, made at defendant's house, correspond with the entries thereof in the bill of particulars No. 1, to which question the defendant objected, but the court overruled the objection and allowed the question to be put, and witness answered that they did correspond in their results and in the carrying out or result. To which ruling of the court and evidence, offered as aforesaid, the defendant excepted, and prayed the court to sign and seal this her fourth bill of exceptions, which is done, although

71    v.16

the said *abstracts* and *paper* were afterwards read to the jury. by the defendant, as will appear by subsequent exceptions.

*5th Exception.* The witness, Caldwell, then examined his *"Abstract Book,"* as desired, and compared the entries therein of his measurements and valuations of the work done by the plaintiff on the defendant's house, as already given in evidence, with the *bills of particulars,* filed by the plaintiff in this cause, and which bills had already been used by the witness in his examinations aforesaid, and after such examination and comparison, in answer to the plaintiff's inquiries, proved that the entries in the *"Abstract Book"* agreed in the results with the corresponding items in the *bills of particulars.* The witness then being cross-examined in relation to the matters, the subject of his examination-in-chief, stated that, even after his inspection of the said bills of particulars, his recollection of the measurements made by him was not so distinct as to enable him, without the aid of said bills, to say what were the descriptions and particulars of the work measured by him, and that his evidence in relation to said measurements was given, as before stated, upon his general recollection of the work, and his confidence in the accuracy of his aforesaid bills, made out by him and referred to by him as aforesaid, and that in his evidence as aforesaid, he stated the quantities and descriptions of the work measured from said bills. He was then asked to turn again to the entries in his *"Abstract Book"* of his aforesaid measurements, to which he had already referred at the instance of the plaintiff, and to the *headings* thereof, and to read the *said entries* of measurements and the *headings* thereof to the jury, and *did read the same* to the jury. [The *headings* upon the several pages of the book, *so read,* are: *"Mrs. Matilda E. Green, Dr. to Sprogle & Caulk,"* except in one instance, where such heading was erased and reference made to another page, where it was entered, *"Matilda E. Green, Dr. to Daniel M. Sprogle."*] And the witness further proved, that some of the entries and headings are in the handwriting of his son, and that one of the headings was first made by his son and afterwards corrected and altered by witness, and other of the

headings and entries were made by witness, and that other
entries of his son were also corrected by witness, and that
some of the original entries were made by witness, and that
it is a book of the witness. The plaintiff, then further ex-
amining the witness in chief, proved that a reasonable deduc-
tion from the bills prepared by him would be 33⅓ *per cent.*,
and that in Baltimore the deduction would be 40 *per cent.*,
and further proved, that witness had measured work in An-
napolis for four several persons, and the plaintiff then asked
him what reduction was made from his valuation for the
work done for one of said persons, viz., James Iglehart, to
which question the defendant objected and the court sus-
tained the objection. The plaintiff then asked the witness
to explain his reason for making the headings in his *"Ab-
stract Book,"* as for work done for defendant by Sprogle and
Caulk, to which question defendant objected, and the ques-
tion being submitted to the court, the judge inquired of de-
fendant's counsel whether they offered to read the *heading*
of the *"abstract"* to the jury as part of the cross-examina-
tion, and said, if offered as part of the cross examination the
court did not consider it admissible, and defendant's counsel
replied that they would offer it in chief. The judge then
asked for *what purpose* it was so offered, if it was offered to
prove *partnership* between the plaintiff and Sprogle, and
they replied it was offered for that purpose. The plaintiff
then (a few moments only having elapsed since the headings
and entries were read to the jury) objected to the admissi-
bility of the headings for that purpose, which objection the
court sustained, and thereupon the defendant excepted, and
prayed the court to sign and seal this her fifth bill of excep-
tions which was accordingly done.

*6th Exception.* The counsel for the defendant then stated
that it had not been, and was not their intention to waive their
right to rely on these headings and other entries in the *"Ab-
stract Book,"* as evidence offered on the part of the plaintiff,
and their right to cross-examine the witness in reference to
said matters for all the purposes of the defence, and in order
to avoid all misapprehension on the subject, they proposed to

recall the witness, and to place the *"Abstract Book"* in his hands, and to cross-examine him generally as to the headings and other entries therein, and to read said headings and other entries as parcel of their cross-examination, but the court refused to permit the witness to be recalled for the purposes aforesaid, adhering to the opinion already expressed, that the defendant was not at liberty, as part of her cross-examination, to read these headings to the jury, but permitted the entries with reference to which the plaintiff had examined the witness in chief to be read to the jury, to which ruling the defendant excepted, and prayed the court to sign and seal this her sixth bill of exceptions, which was accordingly done.

*7th Exception.* The defendant then, further to maintain the issues on her part joined, offered to read to the jury the entries in the *"Abstract Book"* aforesaid, relating to the measurements and valuations of the work done by the plaintiff on the defendant's house, with the *headings* thereof, stating that she intended to rely thereon, with other testimony in the cause, as evidence that said work was done by the plaintiff in execution of a contract for that purpose, between the defendant, on the one part, and the plaintiff and Sprogle, on the other, as partners, but, on objection taken by the plaintiff, the court refused to permit said headings to go to the jury, to which refusal the defendant excepted, and prayed the court to sign and seal this her seventh bill of exceptions, which was accordingly done.

*8th Exception.* The defendant then, for the purpose of sustaining the issues joined on her part, and proving that the work done and materials furnished, for defendant as aforesaid, was so done under a joint contract, between defendant on the one side and plaintiff and Sprogle, as partners, on the other, offered to prove to the jury, that the witness, Caldwell, already examined on the part of the plaintiff, was requested, by Sprogle, to visit Annapolis, for the purpose of measuring all the work done on defendant's house in 1854 and 1855, by the plaintiff and others, and that he came down understanding that he was to measure all the work done at defendant's house by plaintiff and by Sprogle and others;

and that on his said visit he went to defendant's house with the plaintiff, and stated to her that he had come to measure said work; that defendant thereupon sent for Mr. Randall, her counsel, and stated to him the purpose for which said Caldwell and plaintiff had visited her, and that Mr. Randall having understood the object, stated to the parties that defendant insisted she had made a contract for $2000 for the work done, and that she had paid for it, and that she would have nothing to do with any measurement of said work, but that she would permit the said parties, if they pleased, to go through her house and measure said work, and that this statement, of Mr. Randall, was made to plaintiff and Caldwell, and must have been heard by them, and that Caldwell did accordingly proceed to measure all the work done in said house by the plaintiff and Sprogle and others; and also offered in evidence a contract, dated the 24th of June 1856, between the Visitors and Governors of St. John's College, of the one part, and Sprogle and Caulk, of the other part, by which the latter jointly agreed and undertook to erect for the former certain buildings, according to certain specifications, which contract and the accompanying bond and specifications are all signed "*Sprogle & Caulk;*" and also a contract between H. M. Steele and the same parties, by which they jointly undertook to build a dwelling-house for said Steele, which is also signed in the same way, and proved the signatures of Sprogle and Caulk to these contracts, and that they did the work so contracted for by them; and also offered to read to the jury the entries in the "*Abstract Book*" of said Caldwell, already spoken of, relating to the measurements made by him of the work done on the defendant's house by plaintiff and Sprogle and others, with the headings thereof, with proof of the handwriting thereof. To the admissibility of which testimony, so offered by the defendant, the plaintiff objected, and the court sustained the objection, and refused to allow said testimony to be given as evidence of the said partnership, but permitted the said entries of the valuation and measurement, without the headings, to be read on the question of measurement and value, to which ruling the de-

fendant excepted, and prayed the court to sign and seal this her eighth bill of exceptions, which was accordingly done.

The verdict and judgment were in favor of the plaintiff, and the defendant appealed.

The cause was argued before LE GRAND, C. J., BARTOL and GOLDSBOROUGH, J.

*A. B. Hagner* and *Thos. S. Alexander,* for the appellant, argued:

1st. Conceding that the witness was at liberty to refresh his memory by looking at the paper written by the measurer at the time the work was measured, provided such paper was at that time actually submitted to his inspection and approved by him, still the court erred in allowing the question to be put and answered as stated in the first exception, because this paper was not in the handwriting of, or made by, the witness, and there was no proof that it was prepared at the time of the measurement, or was seen by the witness at any time prior to his examination, and because he could not, even with the aid of the paper, prove that it contained a correct particular of the work done, or its value. *Powell on Ev.,* 309. 1 *Greenlf's Ev.,* secs. 436, 437. 6 *G. & J.,* 60, *Salmon vs. Feinour.* 14 *Md. Rep.,* 399, *Martin vs. Good.* The question was also objectionable as a *leading* one. 1 *Greenlf's Ev.,* sec. 440. It was not admissible upon the ground that the witness was an *expert,* for there was no evidence that he was a *tinner,* and his answer thereto was the mere *opinion* of one not competent, as an expert, to give an opinion, and should therefore have been rejected. 1 *Greenlf's Ev.,* sec. 440. *Powell on Ev.,* 54. 1 *Phillips' Ev.,* (*Ed. of* 1859,) 778. 10 *Md. Rep.,* 269, *Scaggs vs. Balt. & Wash. Rail Road Co.*

2nd. The paper placed in the hands of the witness, Caldwell, was in the handwriting of his son. It was taken by the son from the Abstract Book of the witness, which was made up from his Dimension Book, partly by witness and partly by his son. The Dimension Book was the book of

original measurements. As the bill of particulars was nothing more than a statement made from a statement which had been prepared from original memoranda, the witness could not prove that the paper in his hands was correctly copied from his Abstract Book, nor that the Abstract Book was correctly made up from the Dimension Book; nor was the paper used for the purpose of refreshing the memory of the witness; and there was no proof that all the work measured had been done by the plaintiff, and no proof offered of the correctness or reasonableness of the prices. For these reasons the court erred in the second exception in allowing the question whether this bill of particulars in his hands was a correct statement of his measurements and valuations, to be put to and answered by the witness. *Powell on Ev.*, 311. 1 *Greenlf's Ev.*, sec. 436. 1 *Phillips' Ev.*, 585 to 588, and notes. 3 *Md. Rep.*, 265, *Lewis vs. Kramer, et al.* 14 *Md. Rep.*, 399. 2 *Carr. & Payne*, 196, *Jones vs. Stroud.* Again, the memorandum referred to was made at the recommendation of one of the parties, the plaintiff, and for this reason was inadmissible. 1 *Greenlf's Ev.*, sec. 438, 439. 15 *Md. Rep.*, 54, *Spring Garden Mutual Ins. Co. vs. Evans.*

3rd. The third exception presents the same questions, in reference to the hardware and hauling bill, as are presented in the second exception, in reference to the carpenter's bill, and also the additional objection that the evidence of Caldwell, as to the *value* of the hardware, was *hearsay* merely, and should have been rejected for this reason. 1 *Greenlf's Ev.*, secs. 98, 99, 124. 1 *Phillips' Ev.*, 585. *Powell on Ev.*, 70, 71. 7 *Md. Rep.*, 215, *Lee vs. Tinges.*

4th. The Abstract Book being produced, as stated in the fourth exception, the court permitted the witness, Caldwell, to compare it with the bill of particulars No. 1, and to say that they corresponded in their results. This evidence was inadmissible in the absence of the original Dimension Book, (*Powell on Ev.*, 36, and authorities cited on the 2nd point,) and moreover the correspondence should be shown in regard to the *particulars* and not the *results* of the papers.

5th. The headings and entries in the Abstract Book having

been read as part of the cross-examination, *without objection by the plaintiff*, and further examination thereon had, as stated in the fifth exception, it was too late to object to their admissibility. 8 *Gill*, 120, *Shanks vs. Dent.* 9 *Gill*, 314, *Baugher vs. Duphorn.* Moreover, the examinations on the part of the plaintiffs, in reference to these entries, entitled the defendant to use *all the entries* in the Abstract Book, concerning this work, as parcel of her cross-examination. *Powell on Ev.*, 379. 1 *Greenlf's Ev.*, secs. 437, 466. 2 *Phillips Ev.*, 917. 8 *Md. Rep.*, 330, 336, *Carroll vs. Ridgaway.* 3 *Term Rep.*, 749, *Doe vs. Perkins.* 2 *Carr. & Payne*, 325, *Loyd vs. Freshfield. Ibid.*, 196, *Jones vs. Stroud. Ibid.*, 603, *Rex vs. Ramsden.* 6 *Carr. & Payne*, 280, *Gregory vs. Travernor.* The same question as to the right of the defendant to read from the Abstract Book, for the purposes of the cross-examination, is raised more distinctly by the seventh exception. The court limited the defendant to the reading of such entries only as the plaintiff had used in his examination-in-chief. The objection to the entire rulings is, that if the plaintiff will read one sentence from a paper, he thereby gives in evidence the entire paper, and entitles the defendant to read so much thereof, on cross-examination, as may be pertinent to the defence.

6th. The seventh and eighth, and also the fifth exceptions present the question as to the right of the defendant to read the headings in the Abstract Book, and the other evidence in the eighth exception, as evidence in chief, for the purpose of showing a *partnership* between the plaintiff and Sprogle. It is submitted that this evidence was admissible to prove a partnership as alleged. It was evidence sufficient to authorize a jury to infer from it the existence of such a partnership. 2 *Greenlf's Ev.*, sec. 483. 1 *Lindley on Part.*, 89, 91. *Collyer on Part.*, secs. 769, 775. 1 *Phillips' Ev.*, 466, 496. 4 *Term Rep.*, 720, *Saville vs. Robertson.* 2 *Starkie*, 453, *Ellis vs. Watson.* 1 *Carr. & Payne*, 614, *Stables vs. Eley. Ibid.*, 627, *Hellings vs. Gregory.* 2 *How.*, 263, 283, *Matheson vs. Grant.* 2 *Pet.*, 186, *Le Roy, Bayard & Co., vs. Johnson.* 19 *New Hamp.*, 465, *Chase vs. Stevens.* 39

*Maine*, 157, *Holmes vs. Porter.* 5 *G. & J.*, 384, *Bernard vs. Torrance.* 10 *Md. Rep.*, 122, *Boyd vs. McCann.*

*Frank H. Stockett* and *Cornelius McLean*, for the appellee, argued:

1st. The first exception relates merely to the proof of the value of work included in a bill of particulars, before offering proof that the whole of the work was done. If this be the construction of the exception, (and we so understand it,) the point involved has been decided by our courts, because they have constantly refused to control the course of the plaintiff's testimony, allowing him to begin where he pleases. 5 *H. & J.*, 491, *Whittington vs. Farmers Bank.* 4 *Md. Rep.*, 510, *Marshall vs. Haney.* The work spoken of was done by the witness himself, and was measured by Caldwell in his presence and under his supervision, and he identified the work done and described in this paper as his work, and why should he not be allowed to give his *opinion* of its value; he did the work, was in the habit of doing such work, and was, in fact, an *expert*, competent to give his opinion, at least, of his own work. We think the law as laid down in 1 *Greenlf's Ev.*, secs. 436, 437, and in the case of *Salmon vs. Feinour*, 6 *G. & J.*, 60, fully sustains the ruling in this exception. The question is not a *leading* one: how could it have been put in any other form? 1 *Greenlf's Ev.*, sec. 434, 435.

2nd. The question raised by the *second* exception may be considered as included in the *fourth* and *fifth*, because the Abstract Book having been produced, no question could be raised now as to which is the *original*, and the witness proved that he had compared them. On this point, as conclusive of the question, we refer to the case of *Martin vs. Good*, 14 *Md. Rep.*, 398, and to 1 *Greenlf's Ev.*, secs. 437, 439, and *notes*, to prove that the witness had a right to refer to the bill of particulars, as to which he testified that it was the result of his own measurements, although he could not recollect the items of his measurement. It would have been impos-

sible for him to recollect the items, and if such testimony could not be given, there could be no useful measurements in disputed cases. But the ruling in the second exception is correct, because the paper referred to was not a *copy*, but an *original*, and made by the witness or under his supervision, directly after the time when the measurement was done.

3rd. In the *third* exception, the measurer testified as to the value of the hardware, from his knowledge of the market value. That knowledge can only be obtained from buyers and sellers, and he gave, as the source of his knowledge, such reports. He was an expert and gave the source of his knowledge. It was his business, as a measurer, to fix a price, because nobody else could do so without seeing, and nobody could see but an expert.

4th. The *sixth* and *seventh* exceptions, and that part of the *fifth* relating to the *headings* of the Abstract Book cannot be sustained, because the entries in that book, called the *headings*, are only entries, and were not read at the request of the plaintiff, as the book was not in evidence, and other entries could not be read, but as the defendant's evidence, and they were, therefore, properly ruled out as cross-examination. 1 *Greenlf's Ev.*, sec. 466. And they were properly ruled out as evidence of *partnership*, because only the statement of a party, who, if he knew any thing on the subject, could have been examined. It would have been the hearsay of a witness present on the stand. The objection to their admissibility did not come too late; it was raised as soon as the *purpose*, for which they were offered, was disclosed. 5 *Gill*, 120, *Dent vs. Hancock.*

5th. The only testimony offered of partnership was the headings, which were properly excluded, because not admissible for any such purpose, and the joint contracts made in 1856, a year after these transactions. The question in this case was, whether a partnership existed at the time this work was done, and certainly one or a half dozen acts, or even direct proof of a partnership *afterwards*, is no evidence of a partnership at the time the work was done for the recovery of which this suit was brought. The joint contracts, offered

in evidence here, were made in 1856, a year after the *completion* of the work, which was begun as far back as 1854. 2 *Greenlf's Ev.*, sec. 483. *Coll. on Part.*, sec. 769. There was no evidence of general partnership offered or attempted to be offered; there should have been some evidence of acts of partnership, *prior to this work*, in order to raise the presumption of partnership at the time. Not one of the numerous authorities and cases, cited by counsel on the other side, sustain the admission of this evidence, but on the contrary, the cases in 4 *Term Rep.*, 721, and 2 *How.*, 263, most strongly relied on by them, clearly show the utter incompetency of this evidence to prove partnership.

LE GRAND, C. J., delivered the opinion of this court:

This is an action instituted to recover for work and labor and materials, furnished by the plaintiff in the repair of the house of the defendant, at Annapolis.

The questions which this court are now called upon to decide, relate to the rulings of the Circuit court, touching the admissibility of testimony. The defendant took eight exceptions to the opinions of the court. They will be noticed in the order in which they are presented in the record.

*As to the first exception:*—The plaintiff after giving general testimony of the work done and materials furnished, and of the value of both, called to the stand Thomas A. Mitchell, and placed in his hands the bill of particulars marked No. 3. The witness stated that the paper was not in his handwriting, but in that of Mr. Caldwell, a measurer, and that he identified the work there charged as the work done by him, and measured by Caldwell under his supervision; thereupon he was asked, by the counsel of the plaintiff, whether, in his opinion, the charges in the bill of particulars were fair, and what was the amount thereof? The defendant objected to the question, and the witness in answer to another question, stated, that he could not state from his recollection, even after looking at the bill of particulars, that all the articles charged therein were furnished and the work done as charged. The defendant insisted on her objection, but the court overruled

it, and the question was allowed to be put to the witness and answered by him.

If the question was improper, it was so because the paper was not in his handwriting, and because after he had examined it he was unable to say, that all the articles charged in it were furnished, and all the work charged, was done. There is nothing in the testimony of the witness to show that, the particular paper was made at his instance, (although the measurement of the tin-work was under his supervision,) or, that in January 1859, the time when he testified, the paper enabled him then to say from anything he had done in connection with the making out of the paper, that he knew what it declared, was true. The matter then stands thus: a witness is asked as to the correctness of the charges in a bill not made out by himself, and as to the time of the making it out of which there is no evidence, and in regard to all the items of which, he has not a recollection. We are of the opinion, that under all the authorities the question ought not to have been allowed to be put to the witness.

There is is a great deal (unnecessary to be recapitulated here) said in the elementary books, and also, in the adjudged cases, on the general subject of the use of memoranda as evidence, and the circumstances under which they can be referred to by a witness to refresh his memory. What was supposed to be the ancient rule has been relaxed by more recent decisions; and now it is held not to be necessary that the memorandum should have been made by the witness, but, if it was made at the time, or about the time, of the occurrence of the fact recorded in it, and the witness from having then seen and recognized it, as containing the truth, of which he is still convinced, at the time of the trial, he may be examined in regard to it. But he must make it an original source of information, otherwise he cannot be allowed to refresh his recollection by reference to it. In *section* 436, *of* 1 *Greenleaf on Evidence,* the rule is thus laid down: "Where the witness neither recollects the fact, *nor remembers to have recognized the written statements as true, and the writing was not made by him, his testimony, so far as it is founded*

*upon the written paper, is but hearsay;* and a witness can no more be permitted to give evidence of his inference from what a third person has written, than from what a third person has said."

In the case under consideration, he does not remember (at least he does not so testify) to have recognized the bill of particulars as containing a true statement; indeed, there is nothing, in his evidence, going to show that he ever saw it before the trial; and his evidence is, that he cannot recollect, independently of the paper, all the articles charged in it. See *Powell on Evidence,* 309, (96 *Law Lib.,*) *Lewis vs. Kramer,* 3 *Md. Rep.,* 265. In addition to what we have said in regard to this exception, we remark, that we have not understood this exception as it appears from the notes of the counsel of the appellee, to have been understood by them; it does not, in our opinion, simply raise the question whether it was competent to prove by the witness, he being a tinner, the price of certain tin and tin-work; but as presenting the question, whether the bill of particulars could be verified in the manner proposed, and the testimony given by the witness, in reply to the question shows, that such was the scope of it.

*As to the second exception:*—The plaintiff proved by the witness, William Q. Caldwell, that he is a measurer of different kinds of mechanical work, and that he came from Baltimore to Annapolis, at the instance of Daniel M. Sprogle, to measure the work done on Mrs. Green's house; that he proceeded to measure the carpenter's work in the presence of Daniel Caulk, John Wiggins and Mrs. Green; that Wiggins and Caulk pointed out the work done, and that Mrs. Green objected to some of the work pointed out as not having been done; witness said he would put such work down as disputed work, but Mrs. Green objected to its being put down at all, as it had not been done by Caulk; witness then said he would omit such disputed items altogether. It was also proven by the witness, that the bill of particulars was not made by Mrs. Green's agreement or consent. The plaintiff then, by his counsel, offered to the witness the bill of particulars No. 1,

and asked him to state, whether the same was a statement of his measurements and valuations of said work? the witness having first stated, that the bill of particulars No. 1, was in the handwriting of his son, made out several days after the witness had completed the measurements; that the measurements were all set down in his Dimension Book, which book was then in possession of witness, and was handed by him to counsel of defendant at their request; that the bill of particulars was made by his son from the "Abstract;" which was made out partly by the witness and partly by his son, under his superintendence, from the Dimension Book; he could not say the bill of particulars was an exact copy from the Abstract, or corresponded in all particulars with the Abstract, as the Abstract might contain errors and discrepancies; that he thought the footings in the Abstract No. 1, of the dollars and cents, were taken from the bill of particulars; before he had left Baltimore he had compared the bill of particulars with the Abstract, and found them to agree in substance. The witness further testified, that he regarded the bill of particulars as the original statement; that the Dimension Book was on loose paper, requiring many calculations which were in part made by his son and partly by himself; he examined them all and transferred the results to the Abstract Book. The court allowed the testimony to go to the jury, to which ruling the defendant's counsel objected.

The interrogatory propounded to the witness raises the question, whether he could properly be permitted to rely upon a copy of a copy of an original? Notwithstanding the witness said he regarded the bill of particulars as the original, his testimony clearly shows, that it was a copy from the statement in the Abstract Book, which latter, with the results of the calculations extended, was taken from the Dimension Book.

The principle governing such a state of case, we find very perspicuously and accurately expressed at *page* 311, *of Powell on the Law of Evidence,* and we accordingly adopt what the author says in regard to it, having verified what he states by an examination of the authorities on which he relies.  His

Green vs. Caulk.

language (and it effectually disposes of the question asked on behalf of the plaintiff) is as follows: "The memorandum must have either have been made by the witness, or recognized by him, at or about the time when it was made, as correct. It must not contain any of the elements of hearsay, and it will, therefore, be inadmissible if it appear to be the statement of a third person; as where it had been drawn up by such a person from the witness' own memoranda; *or even if it be a copy made by the witness from his own original memoranda.* The rule is consistent with the general principles of secondary evidence, by which the copy of a copy, unless in the nature of a duplicate original, is entirely inadmissible; and there appears to be neither principle nor authority to support the personally eminent opinion of Mr. Phillips, that a copy of an original memorandum, made by the witness himself from his own orginal, would be admissible. It must be remembered, that the original memorandum is itself not an original, but a transcript and copy of the witness' own contemporaneous knowledge, which in its oral form would be the strictly primary and original evidence. Therefore, if the copy of a memorandum were admissible to refresh a witness' memory, there would be no reason why the examined copy of an examined copy of an original document should be, as it clearly is, inadmissible."

*As to the third exception:*—This exception relates to the hardware, and the hauling of it, which was furnished, as alleged, by the plaintiff, in the repairs of the house of the defendant. In regard to the bill of particulars of it, which is marked No. 4, the witness gave the same testimony as he did in reference to the manner and by whom the bill of particulars, mentioned in the last exception, was made out; and the reasoning applied in that instance, is applicable in this. It was further shown by witness, that the plaintiff, in the presence of the defendant, and without denial on her part, said that he had furnished all the hardware, and that he had made a valuation of such of it as had been shown to him by the plaintiff. The witness also testified, that it was his habit, at the time of making his measurements and valuations, to

Green *vs.* Caulk.

make inquiries, as to the value of the materials furnished, of persons supposed by him to be competent to give him information on the subject, and who were in the habit of buying and selling the same, and that at the time of making the appraisement in question he made such inquiries, and that his testimony was based on information so obtained. The court allowed the witness to inspect the several values of the said particulars, as stated in the bill of particulars, and to state what were the values of the several articles of hardware charged as having been furnished. The defendant's counsel excepted.

The general rule is, that the best evidence which the nature of the case admits, should be adduced; *secondary* evidence being admitted only in cases of *necessity*, or where it is a part of the *res gestæ*, or in corroboration of other and independent evidence going to the establishment of the same fact. All the authorities concur on this subject. In the case before the court, the question is, was the *best* evidence offered which the nature of the case admitted? If it was not, then the testimony of the witness was merely hearsay, and, for that reason, inadmissible. The witness was neither a manufacturer of, nor dealer in hardware; all his information, as testified to by himself, was derived from others, who did not give it under the solemn sanctions of an oath. It was competent for the plaintiff to have proved the value of the articles by the person from whom they were purchased. In any event, we think, if the seller was not produced, that a manufacturer of, or dealer in such articles, should have been, or that it should have been shown that the witness had made, *about the time*, purchases of articles of the same or similar character. The evidence offered, extended no farther than to place before the jury the declarations of persons, made without any of the usual guards against error and uncertainty. The fundamental rule is, that the credibility of the witness should be tested by his oath, with the privilege of cross-examination preserved to the party against whom his testimony is adduced. From these considerations it follows that, in the opinion of this court, the testimony objected to was improperly admitted. 1 *Green-*

Green *vs.* Caulk.

*leaf on Ev.*, secs. 98, 99. *Lewis vs. Kramer*, 3 *Md. Rep.*,
265. 1 *Phillips on Ev.*, 585, (*Ed. of* 1859,)

*As to the fourth exception:*—The plaintiff having placed
in the hands of the witness the "Abstract Book," to which
he had previously referred, inquired of him, whether the
entries in the book, in reference to his measurements made
at the house of the defendant, corresponded with the entries
thereof in the bill of particulars No. 1? to which question the
defendant objected, but the court overruled the objection, and
the witness answered, that they did correspond in their results
and "in the carrying out." The defendant excepted to the
admission of the testimony. After the first exception taken
in the case, each one that followed incorporated in it all the
facts embraced in the preceding exceptions. And, according
to the testimony of the witness Caldwell, the results of the
calculations were not transferred from the Abstract Book to
the bill of particulars, but from the latter to the former, and,
as a consequence, the agreement between the two could be
no proof of the accuracy of either, and especially of the bill
of particulars. The results of the admeasurements and
valuations involved nothing more than the questions of arith-
metic, and if these results were but transferred from one paper
to another, they could in neither place, by such process,
verify themselves. What is said on this exception is the
opinion of a majority of the court.

*As to the fifth exception:*—In answer to a question of the
court it was distinctly stated, that the "headings" from the
Abstract Book were offered by the defendant, as evidence in
chief, to prove *partnership* between the plaintiff and Sprogle.
For the specific purpose for which it was offered, *i. e.*, to
show a *technical partnership*, the testimony, we think, was
inadmissible, and properly refused by the court. The offer
was unaccompanied by any declaration of intention to con-
nect it with other evidence going to show the existence, at
any time, of a partnership between the plaintiff and Sprogle;
and the evidence offered, of itself, was clearly inadmissible,
*for the purpose* for which it was offered, although, as will be
hereafter shown, it was admissible on other grounds. We

are also of the opinion that the Circuit court ought to be sustained in its ruling, as stated in the seventh exception.

*As to the sixth exception:*—The point of this exception is, that the court refused. to allow the defendant's counsel to cross-examine the witness, in reference to the entries, in regard to which he had testified, and also in regard to the headings of the same, which he proposed to do, for all the purposes of the defence. We are of the opinion, that the defendant should have been allowed to cross-examine the witness in regard to the entire account, for, although it was composed of many *items,* it was in reality but one memorandum. The party was entitled to subject the testimony of the witness to every test of accuracy, and it is not for this court to anticipate, or rather to conjecture, what facts might have been disclosed under such an examination. Regarding the memorandum as but one entry, in the eye of the law, we think the defendant was entitled to the whole of it, and agree with *Abbott, C. J., (Loyd vs. Freshfield,* 2 *Carr. & Payne,* 325,) that "it would be a disgrace to the administration of justice, if half an entry could be read without the rest."

*As to the eighth exception:*—The court refused to allow the defendant to prove a *partnership* between the plaintiff and Sprogle, by showing that Sprogle went to Baltimore and employed the witness, Caldwell, to measure and value all the work done on the house of the defendant; that Mr. Randall, as counsel of the defendant, stated in the hearing and presence of the plaintiff, that she said she had contracted to pay $2000 for all that was done, and that she had paid it; to show the character of the headings of the entries in the Abstract Book, and also contracts entered into by plaintiff and Sprogle, subsequently to the making of the contract with the defendant. We think the ruling of the Circuit court, on this exception, ought to be affirmed: "Evidence offered for a particular purpose may be properly rejected, though admissible generally or for some other purpose." 6 *Gill & Johns.,* 481. 4 *Md. Rep.,* 509. We have said, in disposing of the sixth exception, that the defendant was entitled to give in evi-

dence the headings of the accounts in the Abstract Book, as part of the same *entries* offered by the plaintiff, and to cross-examine the witness in relation thereto. But we do not think the headings themselves, unsupported by other proof, were admissible evidence to show a partnership between the plaintiff and Sprogle; nor did the declaration of the defendant tend to prove such partnership, although, being uncontradicted by the plaintiff, it might be admissible for other purposes; and we concur in the propriety of rejecting the evidence of contracts made by the plaintiff and Sprogle jointly, with other persons, in the year 1856, as altogether inadmissible for the purpose of showing there was a partnership existing between the parties in 1854 and 1855.

We reverse the Circuit court on the 1st, 2nd, 3rd, 4th and 6th, and affirm it on the 5th, 7th and 8th exceptions.

*Judgment reversed and procedendo awarded.*

(Decided February 20th, 1861.)