# CASES DETERMINED·

## IN THE

# SUPREME COURT OF ARKANSAS

St. Louis Southwestern Railway Company *v.* White Sewing Machine Company.

Opinion delivered February 17, 1906.

1. Evidence—memorandum—past recollection.—Where a telegraph operator testifies that he did not send a certain message himself, and has no present recollection that it was sent, but swears, from contemporaneous memorandum made by him, that at the time it was made he knew that the message was sent, the memorandum in connection with his testimony is admissible to prove that the message was sent. (Page 3.)

2. Appeal—presumption.—Where a witness swears from a contemporary memorandum made by him that he had "knowledge" of the facts therein recited, and the jury so find, it will not be presumed on appeal that the witness meant *information,* instead of knowledge. (Page 6.)

3. Appeal—questions not raised below.—Questions that were conceded at the trial will not be decided on appeal. (Page 6.)

Appeal from Pulaski Circuit Court; *Edward W. Winfield,* Judge; affirmed.

*S. H. West* and *Bridges & Wooldridge,* for appellant.

1. Books and records are legal evidence only when the entries are made by the person whose duty it was to have made them. Greenleaf on Ev. § 117. The entries must be shown to have been correct, and made contemporaneously with the facts

1

recorded. 66 Ark. 316; 60 Ark. 333. In the face of positive testimony that the message was not received by defendant company, and lack of legal evidence that it ever left the office of the "Big Four Railroad," plaintiff can not recover. 57 Ark. 461.

2. Plaintiff should not be permitted to recover without proof of the insolvency of the consignee at the time it attempted to stop the goods in transit. 26 Am. & Eng. Enc. Law (2 Ed.), 1084.

*J. H. Harrod,* for appellee.

McCulloch, J. This is an action brought by the White Sewing Machine Company, a foreign corporation doing business at Cleveland, Ohio, against the St. Louis Southwestern Railway Company to recover, by way of damages, the price of a ·lot of sewing machines shipped over defendant's road to a firm of merchants at Buffalo, Texas. It is alleged that the consignees became insolvent, and that the plaintiff, in exercise of its right to stop the goods in transit, notified the defendant, while it had the machines in its possession, to hold them subject to their (plaintiff's) order, but that the defendant negligently failed to comply with the instruction, and delivered the machines to the insolvent consignees, to the damage of the plaintiff in the sum of the price of the machines.

The facts are that the machines were shipped from Cleveland, Ohio, over the Cleveland, Cincinnati, Chicago & St. Louis Railway Company, commonly designated in the testimony as the "Big Four Railroad." That company executed a through bill of lading to the point of destination, Buffalo, Texas. The Big Four Railroad operated from Cleveland, Ohio, to Cairo, Illinois, and the machines were transported by it to the latter point, whence they were conveyed by transfer steamer across the Mississippi River and delivered to the defendant company at Bird's Point, Mo.; that place being about six miles distant from Cairo, where the office of the Big Four Railroad was located. Whilst the machines were in custody of the defendant at Bird's Point, the plaintiff notified the Big Four Railroad to hold the machines and not to deliver them to the consignee. It is claimed that this notice was communicated by telegraph from the office of the Big Four

at Cairo to the agents of defendant at Bird's Point. This is denied by defendant, and the case turns upon this question alone. The court submitted the question to the jury upon proper instructions, and the jury found in favor of the plaintiff on the issue.

It is contended by the defendant that there is no evidence at all that the notice was ever communicated to or received by it, and that the court should have given a peremptory instruction to return a verdict in favor of the defendant.

All of the agents and employees of defendant in the Bird's Point office who could have received the notice or known of its receipt, if it had been sent, testified that no such message or notice was ever received; and the question whether or not there was any evidence tending to show the communication of the notice depends upon a construction of the testimony of witness R. H. York, who was a telegraph operator in the Big Four office at Cairo.

A telegraph message was, at the time of the taking of proof in the case, found on file in the Big Four office at Cairo, purporting to give directions from the freight agent of that company at Cairo to the agent of defendant company at Bird's Point, to hold the freight shipment in question for further instructions. The original message is shown to be in the handwriting of Browning, a clerk in the Big Four office, who testified that he wrote the message on the date it purports to have been sent out. The service marks on the message, "E. M.," indicating the sending operator, and "B. D.," indicating the receiving operator, are proved to be in the handwriting of York. York testified that the marks were in his handwriting, but that the fact that they were written in ink and apparently with his right hand indicated that he did not send the message. He testified positively that he did not send the message himself. His deposition, taken sometime before the date of the trial, was read in evidence by the plaintiff, and contained the following statement: "A message (referring to the message in question) was sent to H. A. Williamson at Bird's Point on that day, but was not sent by me. The service marks are in my handwriting, but telegram was sent by operator E. M., whose name I do not recall. I would not have written the service marks on message until I knew that message had been transmitted and was received O. K." At the trial of the cause the defendant introduced York as a witness, and he again testified concerning the

service marks, that he did not send the message himself, and did not know which operator in the office sent it. He stated, however, that "every indication is on the message to show that it was sent," and that "I must have had some knowledge of the transmission of the message, or I would not have put it (the service mark) there."

Was this sufficient evidence to go to the jury that the message was sent to and received by appellant's agent at Bird's Point, to whom it was directed? No objection was made as to the competency of the statements, the only question being as to its sufficiency.

Learned counsel for appellant contend that the service marks were inadmissible, as well as insufficient, as evidence of the transmission of the message, because, according to customs prevailing in the telegraphic offices, they should have been made by the operator who sent the message, and whose duty it was to note the service marks upon it. They cite authority, perhaps sustaining their contention, to the effect that where original entries upon shop books and the like are sought to be introduced as evidence, the entries must be shown to have been made by the person whose duty it was to make them—that such entries are not, of themselves, admissible as evidence of the facts recited. 1 Greenleaf, Ev. § 120.

It will be observed, however, that the entries alone are not relied upon as proof of the transmission, but they were introduced in connection with the testimony of York, the man who made them. He says, in effect, that, though he has no present recollection of the transmission of the message, he had personal knowledge of its transmission when he made the notation of the service marks.

"Some courts are willing to receive such entries where the person making them verifies their correctness on the stand and the original observer, salesman, etc., is dead or otherwise unavailable. Other courts go even further, and admit them without accounting for the original observer, on the sound consideration that it is practically impossible in mercantile conditions to trace and procure every one of the many individuals who reported the transaction." 1 Greenl. Ev. (16 Ed.), § 120a.

This principle is fully recognized by this court in the case of *Stanley* v. *Wilkerson,* 63 Ark. 556.

The notation or memorandum was competent as evidence of the past recollection of the witness York. He said, in effect: "I did not send the message myself, and have no present recollection that it was sent, but I state, from this memorandum appearing in my handwriting, that I knew when I made it that the message had been sent." 1 Wigmore on Ev. § § 744-752; 1 Greenleaf on Ev. § 439; *Chamberlin* v. *Ossipee,* 60 N. H. 212; *Lawson* v. *Glass,* 6 Colo. 134; *Acklen's Ex'or* v. *Hickman,* 63 Ala. 494; *Insurance Companies* v. *Weides,* 14 Wall. 375; *Russell* v. *Hudson River Rd. Co.,* 17 N. Y. 134; *Green* v. *Caulk,* 16 Md. 556.

"It is today generally understood that there are two sorts of recollection which are properly available for a witness—past recollection and present recollection. * * * In the former sort, the witness is totally lacking in present recollection and can not revive it by stimulation, but there was a time when he did have a sufficient recollection and when it was recorded, so that he can adopt this record of his then existing recollection and use it as sufficiently representing the tenor of his knowledge on the subject. * * *

"(1) The record * * * must have been made at or about the time of the event recorded. Whether in a given case it was made so near that the recollection may be assumed to have been then sufficiently fresh must depend on the circumstances of the case. (2) The witness need not have made the record himself; the essential thing is that he should be able to guaranty that the record actually represented his recollection at the time, and this he may be able to do, either by virtue of his general custom in making such records, or' (as in the common case of an attesting witness) by an assurance that he would not have made the record if he had not believed it correct." 1 Greenl. Ev. (16 Ed.), § 439a, 439b.

The rule is concisely stated by the Supreme Court of Alabama in *Acklen's Ex'or* v. *Hickman, supra:* "If, however, the witness go further, and testify that at or about the time the memorandum was made he knew its contents, and knew them to be true, this legalizes and lets in both the testimony of the witness and the memorandum. The two are the equivalent of a present,

positive statement of the witness, affirming the truth of the contents of the memorandum."

This doctrine finds approval in the decision of this court in the recent case of *Petty* v. *State,* 76 Ark. 515, though the precise question we have now was not involved, and we entertain no doubt that it is sound, and is well supported by authority.

The testimony of witness York brings itself squarely within the rule stated above. It is urged that the witness may have recorded only his information as to the transmission of the message, and not his personal knowledge of that fact. We must, however, accept the statement as we find it in the language of the witness, and give it the strongest probative force which the jury might have accorded it. He said that he must have had knowledge of the transmission, or he would not have written the service marks on the message. We can not presume that the witness meant information when he said knowledge. It was possible for him to have had personal knowledge of the transmission of the message without having transmitted it himself. He may have been present and heard it. He was not examined as to his means of knowledge, and we can not say what they were, but the jury were warranted in accepting his unqualified statement that he did know. If the message was sent, it must have been received by the telegraph operator in the office of appellant at Bird's Point. The testimony of York was sufficient to justify the jury in finding that it was sent and received.

With the weight of the evidence, we have nothing to do. There was sufficient evidence to go to the jury on this question, and their finding upon the disputed issue of fact is conclusive upon us.

Learned counsel for appellant also contend that the case should be reversed because there was no proof of the insolvency of the consignee, and the consequent right of appellee to stop the goods in transit, nor that the whole price of the machines was lost to appellee by the delivery to the consignee. It is too late to raise that question here, as in the trial below appellant's counsel expressly declared in open court when the case was submitted that no other question was involved in the case except that of notice to the defendant of the directions to stop.

The case must be determined here upon questions raised and determined below.

Affirmed.