HICKS *v.* KNIGHT.

Opinion delivered February 16, 1920.

DRAINS—AUTHORITY TO MAKE LEVEES.—The Greene-Craighead Drainage District No. 1, created by special act (Acts 1919, No. 413), declaring that the district was organized for the purpose of reclaiming lands from surface water by the construction of the necessary ditches, drains, levees, etc., contemplated the construction of levees on the lower side of lateral ditches to retain the surface water in the laterals and to force it into the main ditch, or ditches, and had no reference to the building of levees to protect the lands against overflow from channel waters in flood time.

Appeal from Greene Chancery Court; *Archer Wheatley*, Chancellor; reversed.

*Allen D. Stewart*, for appellants.

1. The complaint states facts sufficient to constitute a cause of action, and it was error to sustain the demurrer. Kirby's Digest, § 623; 1 Kinney on Irrigation and Water Rights (2 Ed.), par. 319.

2. Courts may grant injunctions in all cases of illegal or unauthorized taxation or assessments. Kirby's Digest, § 3966; 30 Ark. 101; 59 *Id.* 344, 358; 22 Cyc. 767; 27 *Id.* 1270; 37 *Id.* 1251; 33 Ark. 441.

Special assessments for local improvements can only be justified on the ground of peculiar and special bene-

fits, and where they are exceeded the assessment is unlawful and void. 119 Ark. 188; 86 Id. 1-8; 177 S. W. 880; 109 Id. 528; 172 U. S. 269; 181 Id. 324, 371, 396. The complaint alleges and the demurrer admits that the lands are assessed and taxed in *five other districts,* and that the assessments are excessive and confiscatory and squarely in violation of article 2, section 22, Constitution.

2. The proper notice was not given nor opportunity offered to be heard. 12 C. J. 1260-1; 50 Hun. 347-350; 237 U. S. 413; 74 N. Y. 183; 203 U. S. 323; 207 Id. 127; 122 Iowa 94; 162 Cal. 14; 193 U. S. 79. Notice was not given as required by special act 413 and the levees will not benefit appellant's lands at all but will dam up the waters and injure them.

*Jason L. Light* and *Huddleston, Fuhr & Futrell,* for appellees.

The contentions of appellants that the improvement is not within the scope of the act, that proper notice was not given, and that the assessments are confiscatory, are not well taken. 20 So. Rep. 780; 39 S. E. 752; 71 S. W. 366-7; 62 Fed. 129, 131-3; 36 N. E. 159; 56 N. W. 946; 84 Wis. 438; 54 N. W. 793-5. See also 83 Ark. 54.

HUMPHREYS, J. This suit was instituted by petition of appellants against appellees, as commissioners of Greene-Craighead Drainage District No. 1, in the Greene Chancery Court, to enjoin them from issuing bonds, or other obligations, attempting to fix any liens on any lands in the district, and from awarding any contract or contracts for the construction of levees, drains or bridges in said district.

The bill, in addition to others, contained the following allegations: That an attempt was made to create the drainage district in question by Act No. 413 of the Acts of the General Assembly of the State of Arkansas for the year 1919; that, according to the plans and estimates of the engineers, the estimated cost for caring for the water, which descends upon the surface of the land from falling rains and snows, was approximately $85,000;

that, in addition to these plans and specifications, there was incorporated in the engineer's plans and specifications a system of levees along the St. Francis River, to prevent overflows therefrom, the cost of which was estimated at approximately $200,000; that appellee took a total sum of $328,190, representing an approximate cost of the total improvement, including the levee scheme, as a basis for assessing benefits against the lands in the district. The bill is quite long, and the additional allegations are fairly summarized in the brief of appellant, as follows:

"1. That Special Act No. 413 confers power only to effect reclamation against surface water and not against channel water of the St. Francis River; that $200,000 of the assessments are appropriated to build levees to confine the channel waters of the river within the channel; and that said expenditure of $200,000 for said purpose is unauthorized and beyond the scope of said special act.

"2. That said levees will not benefit appellants' lands, because (a) the only reason for their construction is that it is the opinion of the engineers that when the Mingo Swamp is drained in Missouri that the water level in the St. Francis River will be raised to such height as to require said levees; but that in fact the drainage of Mingo Swamp will not raise the water level at all, and that said levees will be wholly unnecessary; (b) even if the draining of the Mingo Swamp should raise the water level in the river the construction of the proposed levees would not benefit, but would injure, appellant's lands because when constructed these proposed levees would make a dam which would hold all surface water upon their lands and would form a lake which would inundate their said lands—even if said levees should protect their lands from the channel waters of the river they would inundate their said lands by collecting the surface water and throwing it back upon said lands.

"3. That these lands are in five other improvement districts besides that involved in this case; that

practically all said lands are mortgaged for one-half their value; that the aggregate of these fixed charges in many instances greatly exceeds the value of these lands; and that the annual income from these assessed lands will not be sufficient to pay the annual interest, annual assessments in improvement districts and annual general taxes, thus working a complete and total confiscation of the same.

"4. That no notice of the making, equalization, readjustment of assessments and damages was even given appellants."

Appellee demurred to the bill for the alleged reason that it did not state sufficient facts to constitute a cause of action. The court sustained the demurrer and dismissed the bill for want of equity, from which an appeal has been duly prosecuted to this court.

It is insisted by appellants that Special Act No. 413, Acts of the General Assembly of 1919, did not confer power to construct levees along the St. Francis River so as to prevent its flood waters from overflowing the lands, in the district; that it was the purpose and intent of the act to authorize ditches, levees, etc., for the purpose of caring for surface water only, or such waters as diffused themselves over the surface of the ground from falling rains or snows. We think it quite clear from a reading of the whole act that no intention was evinced by the Legislature to authorize the construction of an expensive levee system along the St. Francis River so as to prevent its channel waters at flood time from overflowing the lands in the district. The purpose for which the district was created is expressed in the following language, found in sections 2 and 23 of the act, and reads as follows:

"Said district is organized for the purpose of reclaiming said lands from surface water by the construction of the necessary ditches, drains and levees, and the straightening, widening and deepening of ditches already constructed in said territory. * * *

"The word 'ditch' as used in this act shall be held to include branch or lateral ditches, tile drain, levees, sluiceways, flood gates and any other construction work found necessary for the reclamation of wet and overflowed land."

We do not think the word "levees" in the connection used, in the clause quoted, has reference to levees other than those which may be constructed on the lower side of lateral ditches to retain the water in the laterals and force it into the main ditch, or ditches. We think, therefore, the surface waters intended by the act to be controlled by levees was such surface water only as diffused itself over the land from falling rains and snows, or such waters as flow over the surface from one body to another body of land, or such waters as may be characterized as "swamp" waters; and had no reference whatever to the building of levees to protect the lands against overflow from channel waters in flood time. Had it been the intention of the Legislature to authorize the construction of levees to protect the land against channel waters, it would have certainly evinced this intention by more accurate and definite language. Especially so, had it been intended that the major portion of the improvements were to be levees and not ditches. Certainly, at the time of the passage of the act the Legislature did not have in mind the flooding of the St. Francis River by the drainage of Mingo swamp, located in Missouri, by a system of ditches toward and into the St. Francis River, some sixty miles above the place selected for the construction of levees in the engineer's plan. Certainly it was not in the mind of the Legislature to plan for protection against such a remote contingency at such a great expense. According to the allegations of the bill, the scheme of improvement is entirely unauthorized by the act creating the district. It is clearly within the province and jurisdiction of a chancery court to enjoin a sale of bonds or the award of contracts unauthorized by law, when the issuance of the bonds would cast a cloud upon the lands included in the district.

Under this view of the case, we deem it unnnecessary to pass upon or construe the other grounds of attack upon the act or proceedings thereunder.

For the error indicated, the judgment is reversed and the cause remanded with directions to overrule the demurrer to the bill.

HUMPHREYS, J. (on rehearing). On rehearing we are asked, notwithstanding the original act failed to authorize the construction of an expensive levee system along the St. Francis River, so as to prevent its channel waters at flood time from overflowing the lands in the district, to set aside the judgment rendered in this cause and uphold the act, because, since the rendition thereof, the Legislature has enacted a curative act, ratifying and validating the plans, maps and profiles for the construction of said levee along the St. Francis River. In support of the request, solicitors for appellees cite the case of *Sudberry* v. *Graves,* 83 Ark. 344, and others to like effect. In these cases, curative acts were taken into consideration in the final determination of the cases after submission, but not after final determination and rendition of judgments therein. We think after the rendition of a judgment or decree in a case the only matters which should be considered upon rehearing are matters that existed at the time of the rendition thereof. The consideration of subsequent legislation after the rendition of a judgment or decree necessarily involves the validity of the subsequent enactment. So many questions might arise concerning the validity and effect of a curative act, we think it best for such matters to be presented in an original hearing. While this court has jurisdiction over its judgments and decrees until the expiration of the term at which rendered and may set them aside in the exercise of a sound discretion, yet the practice has been not to do so except for good reasons overlooked, which existed at the time of the rendition thereof; so, for the reasons suggested, we think the court should refrain from settling new questions on rehearing.

The motion for rehearing is therefore overruled.