GRAY *v*. DOYLE.

Opinion delivered January 26, 1925.

1. DRAINS—POWERS AND LIABILITIES OF COMMISSIONERS.—Under Crawford & Moses' Dig., § 3630, continuing the existence of drainage districts after the completion of their drainage systems, the power of drainage commissioners to construct an embankment in aid of the drainage project nine months after its completion was within the authority of the commissioners, and hence they were not individually liable for damages to plaintiff's land from overflows caused by such embankment.

2. APPEAL AND ERROR—QUESTIONS CONCEDED BELOW.—Under the rule
that questions conceded at the trial will not be decided on appeal,
*held* that where plaintiff's counsel in the trial court announced
that he was not seeking recovery against the drainage district, but
only against the commissioners of the district in their individual
capacity, an appeal from an adverse judgment against the plain-
tiff will not be reversed upon the ground that the district should
have been held liable.

Appeal from Lawerence Circuit Court, Western
District; *Dene H. Coleman,* Judge; reversed.

STATEMENT OF FACTS.

This action was instituted in the circuit court against
Caney Creek Drainage District, J. P. Doyle, I. M. Hus-
key and S. E. Pinkerston, commissioners, and J. P.
Doyle, I. M. Huskey and S. E. Pinkerston, individually,
to recover the sum of $700, alleged to be the value of
land damaged by them in the construction of a drainage
ditch.

It appears from the record that Caney Creek Drain-
age District was created under the general drainage laws
of the State for the purpose of draining certain lands in
Lawrence County, Arkansas. The drainage ditch came
down from the foothills into Caney Creek, which was
made a part of the drainage ditch for a certain dis-
tance. After Caney Creek got down into Strawberry
Bottoms it spread over the bottoms and ran through
several watercourses into Strawberry River. The Com-
missioners constructed the drainage ditch from a point
where Caney Creek first touched the Strawberry Bot-
toms due east to a point where it emptied into Straw-
berry River. The commissioners made a contract for
the construction of the drainage ditch in February, 1920,
and proceeded to construct the drainage. ditch under
the plans prepared by them.

According to the testimony of the plaintiff and his
witnesses, the contractors, in digging the drainage
ditch, built embankments across three sloughs for the
purpose of floating their boats which were used in the
construction of the drainage ditch. After the con-

struction of the drainage ditch was finished, these embankments were cut so that the water might again flow through the sloughs. About eight or nine months after the drainage ditch was finished, the commissioners built embankments across the same three sloughs, and this caused the waters to back up on the plaintiff's land and permanently damage it to a material extent. One of the witnesses for the plaintiff testified that he helped construct one of the embankments, and that it was done in the summer of 1922.

According to the testimony of the commissioners, these embankments were erected by the contractors while constructing the drainage ditch, and, after the drainage ditch was constructed, the waters partially washed the embankments away. They admitted that they had repaired the embankments and had built them higher and stronger. They did this for the purpose of protecting the lower landowners, and the repairing and strengthening of the embankments was a part of their plans in constructing the drainage ditch.

The circuit judge seems to have been of the opinion that the commissioners, as individuals, caused the erection of the embankments complained of, and that there was no individual liability under the facts stated. Hence a verdict was directed in favor of the defendants. From the judgment rendered the plaintiff has duly prosecuted an appeal to this court.

*G. G. Dent and Gautney & Dudley,* for appellant.

Where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed it is error to take the case from the jury. 103 Ark. 401; 89 Ark. 372. The strongest probative value must be given the evidence of the losing party in construing on appeal the correctness of an instructed verdict. 135 Ark. 542; 132 Ark. 441. The intention in creating the district was to protect against surface waters and had no reference to the building of levees to protect the land from overflow from channel waters, sloughs or natural drains. 142 Ark. 286. Any plan

contemplated after the completion of the original plan would necessarily be a new plan, and no authority existed for this. 154 Ark. 335. Appellees acted as individuals and not as commissioners, for the purpose of conserving their own interest, and are therefore liable.

*L. B. Poindexter,* for appellee.

Appellees were acting as commissioners, and as such were not liable unless they acted corruptly and maliciously. C. & M. Dig. § 3624; 94 Ark. 380; 110 Ark. 416. The word "ditch" as used in the act included "levees." C. & M. Dig. 3638, 3659. A verdict was properly directed under the rule announced in 57 Ark. 461. See 47 Ark. 567.

HART, J. (after stating the facts). The circuit court was right in holding that the commissioners of the drainage ditch were not personally liable for the damage caused by the erection of the embankments in question; it was wrong in holding that the drainage district was not liable.

It is claimed that the commissioners are individually liable because there was no legal authority for them to construct embankments, and because they had no authority to do anything after the construction of the drainage ditch was completed. We cannot agree with counsel in this contention. It is true that the object of the improvement district was to drain the lands within the boundaries of the district, and the general plan to do this was the digging of a drainage ditch. After the construction of the drainage ditch had been completed it was found that it was not fully adequate for the purpose for which it was intended, and the construction of the embankments across these sloughs was done by the commissioners in order to carry out the project of draining the lands within the boundaries of the district. It was thought that the damming up of these sloughs would cause the water from above to flow down the drainage ditch, and not spread out over the lower lands, as it had done before. In aid of the proj-

ect, the lower end of the drainage ditch was deepened to a certain extent, but this was not sufficient to carry off the waters which had been impounded by the construction of the embankments. This caused the waters to flow back over the land of the plaintiff and to materially damage it in a permanent manner.

Section 3630 of Crawford & Moses' Digest provides that the drainage district, after the completion of the drainage system, shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstructions, and of extending, widening or deepening the ditches from time to time, as it may be found advantageous to the district.

We think the authority here given includes the power to build the embankments in question for the purpose of turning the water into the drainage ditch in aid of the drainage system. As we have already seen, the erection of these embankments caused the water to flow back on the land of the plaintiff and to permanently damage it. This act of the commissioners in building the embankments was a new taking or damage to the land of the plaintiff within the meaning of the Constitution, and, being in furtherance of the original plan of draining the lands of the district, the district was liable to the owner whose land was damaged, within the rule announced in *Road Dist. No. 6* v. *Hall,* 140 Ark. 241.

Again, in *Sain* v. *Cypress Creek Drainage District* 161 Ark. 529, it was held that injury to lands from the construction and operation of a drainage project is within art. 2, § 22, of our Constitution, providing that no private property shall be taken or damaged for public use without just compensation. In that case the majority of the court held that the damage complained of was one which was in contemplation at the time the drainage district was created, and was taken into consideration by the board of commissioners in assessing the benefits and arriving at the damages suffered by the landowners by the construction of the drainage ditch. Hence they found that there was no change of plans

subsequent to the assessment of benefits, and no additional taking or damage to .the property, as was the case of *Road Dist. No. 6* v. *Hall,* 140 Ark. 241.

The writer wrote a dissent in that case, but it was based wholly upon the ground that practically the undisputed facts showed that there had been a new taking or damage to the property of the complaining landowners.

It sufficiently appears, from the testimony of the plaintiff and his witnesses, that the construction of the embankments across the three sloughs as they now exist was not a part of the plans of the original improvement. The plaintiff says that the embankments that were constructed by the contractors were for the purpose of impounding the waters so that they might float the boats used in digging .the canal, or drainage ditch, and was not a part of the improvement. The commissioners admit that they strengthened and built the embankments higher than they were originally. They also admit that this was done nine months after the drainage ditch was completed, and it is fairly inferable that it was not a part of their original plans. Hence the court erred in holding that there was no liability on the part of the drainage district, and in directing a verdict in its favor. As we have already seen, the commissioners did not act without legal authority in building the embankments, and, for that reason, there is no personal liability against them.

Section 3930 of Crawford & Moses' Digest provides that, whenever any corporation authorized by law to appropriate private property for its own use shall have entered upon and appropriated such property, the owner shall have the right to bring an action against such corporation in the circuit court of the county in which the property is situated. for damages.

The suit in the present case was brought within the statutory period, and it results, from the views that we have expressed, that the circuit court erred in directing a verdict in favor of the drainage district.

Therefore the judgment will be reversed, and the cause remanded for further proceedings according to law and not inconsistent with this opinion.

HART, J., (on rehearing). Counsel for appellees call our attention to the fact that counsel for appellant announced at the trial of the case that they were not seeking any recovery against the drainage district, but were seeking to recover against the commissioners as individuals. Therefore counsel for appellees insist that it is too late now for the appellant to shift his ground and ask for a reversal of the judgment against the commissioners individually who are held not to be personally liable under the opinion in this case.

Counsel for appellees are correct in this contention. In *St. Louis Southwestern Ry. Co.* v. *White Sewing Machine Co.*, 78 Ark. 1, and in other decisions of this court, it has been held that questions that were conceded at the trial will not be decided on appeal.

We deem it proper to say that the drainage district was made a defendant to the action in the circuit court, and we do not find in the record any order dismissing the case as to the district. Therefore, the case is still pending against the drainage district in the court below and the rights of the respective parties on that branch of the case have not been decided and are not involved in this appeal.

The result of our views is that the motion for a rehearing filed by appellees will be granted, and the judgment of the circuit court in favor of the commissioners as individuals will be affirmed.