HOGGE *v.* DRAINAGE DISTRICT No. 7.

Opinion delivered April 14, 1930.

*C. T. Carpenter,* for appellants.

*Chas. D. Frierson,* for appellee.

HART, C., (after stating the facts). The demurrer admits that plaintiffs' lands have been damaged for a public use, and that the damage has not been ascertained or paid. This court has held that improvements for the protection of river valleys from overflow by building levees and draining them by constructing ditches may be united in one improvement district. The court has also held that a drainage and levee district, after building levees on each side of a river and constructing a reservoir thereby, has no right to build a dam at the outlet of the basin between the lower ends of the levees so as to cause flood waters to flow back and destroy the use of land for agricultural purposes; and that for injuries so caused, the landowners are entitled to compensation. *Sharp* v. *Drainage District No. 7,* 164 Ark. 306, 261 S. W. 923; and *Keith* v. *Drainage District No. 7 of Poinsett County,* ante p. 30.

In these cases the court had under consideration damage caused by this same levee and drainage district. A distinction is sought to be made between the principles of law as applicable to these cases and the present one

in that the lands in these cases were situated within the boundaries of the levee and drainage district, while in the present case they are situated in another county and without the limits of the drainage and levee district. This does not make any difference. There can be no doubt that obstructing a navigable or nonnavigable flowing stream and thereby flowing the water back upon the land of another is such a damage as entitles the owner to compensation.

While this court is thoroughly committed in numerous cases to the doctrine that reclaiming lands bordering upon flowing streams by levees and drainage districts is a work of great public importance and should be encouraged, whenever the courts can do so without violating legal principles, in order to develop our State, still there are settled principles of law which courts cannot ignore. The established rule is that the ordinary course of flowing water cannot be lawfully changed or obstructed for the benefit of one class of persons to the injury of another without compensation in damages. *Taylor* v. *Steadman*, 143 Ark. 486, 220 S. W. 821, and cases cited.

In *Ex parte* Martin, 13 Ark. 198, 59 Am. Dec. 321, the court held that, although the Constitution of the State contained no provision that private property shall not be taken for public use without just compensation, yet this prohibition upon the Legislature is implied from the nature and structure of our government, even if it were not embraced by necessary implication in other provisions of the Bill of Rights. The reason is that, while the right of eminent domain is inherent in the sovereign power, equally so is the vested right to hold property in its citizens, and the right of eminent domain means when the public necessity or common good requires it that the citizen may be forced to sell his property for its value.

Article 2, § 22, of our Constitution expressly provides that private property shall not be taken, appropriated, or damaged for public use without just compensation therefor. Numerous cases including levee and drainage

cases are cited in the footnote of the section to the effect that under this provision the inquiry is no longer confined to the question whether there has been a public invasion or appropriation of private property for public use, but that compensation may be recovered for any damage of a permanent nature done to the property.

If a drainage district actually takes land, compensation must be made or provided for before the land is appropriated; and if the district concedes that damage will result to lands by the construction of the improvement, such damages may be assessed under the law of eminent domain or by the common-law remedy of the owner in an action for trespass on the land. If the levee and drainage district does not concede that damages will result from the construction of the improvement, an action for damages may be brought by the landowner, when the improvement is constructed, to determine the question whether his lands will be permanently injured, and, if so, to recover the damages. This is in application of the provision of the Constitution above referred to that private property cannot be taken or damaged for a public use without just compensation. *Bradbury* v. *Vandalia Levee and Drainage District*, 236 Ill. 36, 86 N. E. 163, 19 L. R. A. (N. S.) 991; and *Fort Worth Improvement District No. 1* v. *Fort Worth*, 106 Texas 148, 158 S. W. 164, 48 L. R. A. (N. S.) 994.

This principle has been recognized and applied by the Supreme Court of the United States in *Pumpelly* v. *Green Bay & M. Canal Co.*, 13 Wall. 166, 20 L. ed. 557, where the plaintiff's lands were overflowed by backwater from the construction of a dam, and the legislative authority for its construction was made the basis of the defense to an action for damages. There, as here, according to the allegations of the complaint, the nature of the injuries to the land worked an almost complete destruction of the value of the land and were permanent in their nature. Mr. Justice MILLER, speaking for the court, said:

"The argument of the defendant is that there is no taking of the land within the meaning of the constitutional provision, and that the damage is a consequential result of such use of a navigable stream as the government had a right to for the improvement of its navigation. It would be a very curious and unsatisfactory result if in construing a provision of constitutional law, always understood to have been adopted for protection and security to the rights of the individual as against the Government, and which has received the commendation of jurists, statesmen, and commentators as placing the just principles of the common-law on that subject beyond the power of ordinary legislation to change or control them, it shall be held that, if the Government refrains from the absolute conversion of real property to the uses of the public, it can destroy its value entirely, can inflict irreparable and permanent injury to any extent, can, in effect, subject it to total destruction, without making any compensation, because, in the narrowed sense of that word, it is not taken for the public use. Such a construction would pervert the constitutional provision into a restriction upon the rights of the citizen, as those rights stood at the common law, instead of the government, and make it an authority for the invasion of private right under the pretext of the public good, which had no warrant in the laws or practices of our ancestors."

Again, in *United States* v. *Lynch,* 188 U. S. 455, 23 S. Ct. 349, a dam had been constructed by the United States in such manner as to hinder the natural flow of a stream, and, as a necessary result, to cause the level of its waters to rise and overflow the land of plaintiff to such an extent as to cause a total destruction of its value. In consequence thereof the land was rendered totally unfit for agricultural use and it was held liable for just compensation. It was held that when the United States Government by the construction of a dam or other public work so floods land belonging to an individual as to destroy its

value, there is a taking of private property within the meaning of the Fifth Amendment.

In *United States* v. *Cress*, 243 U. S. 316, 37 S. Ct. 380, the Government by means of a levee and a dam had caused the waters of the Cumberland River to rise above its natural level so that lands not nominally invaded were subjected permanently to frequent overflows impairing them to the extent of half of their value. A like improvement had caused the waters of the Kentucky River to be raised in the same manner so as to end the usefulness of a mill by destroying the head of water necessary to run it. The finding of the court was that it was not a case of temporary overflow but a condition of permanent injury from recurring overflows. Consequently, it was held that such overflowing was a direct invasion of the private property amounting to a taking of it. The court held that the right to have the water of a nonnavigable stream flow away from riparian land without artificial obstruction is not a mere easement, or appurtenance, but exists by the law of nature as an inseparable part of the land itself.

Again, in *Sanguinetti* v. *United States*, 264 U. S. 146, 44 S. Ct. 264, the principle was recognized that where the overflow was the direct result of the structure erected and its effect constituted an actual, permanent invasion of the land, this amounted to an appropriation of the land and not merely an injury to it.

In the present case, under the allegations of the complaint, the injury to the land was not temporary, but permanent. The customary use of the land was agricultural; and, under the allegations of the complaint, the overflow from the backwaters was the direct and immediate result of the construction of the levees and the dam across the St. Francis River. The demurrer admits these allegations to be true, and the action of the drainage and levee district constituted an actual, permanent injury to the land, and not merely a temporary injury to it. Hence there was a damage to the land within the meaning of

the section of the Constitution referred to, and the district was liable for the amount of damages suffered.

Some argument is made that the damage might have been caused by the construction of drainage improvements in Craighead County, but these matters cannot be considered in the present appeal. It was not incumbent on the landowner to show the particulars in which the construction of the levees and dam would cause the waters to flow back on his land. That would be to plead evidence. It was not necessary for him to negative the fact that the injury was not caused by the construction of other improvements. It was only necessary for him to allege that, by the construction of the levees and dam across St. Francis River, a reservoir was erected which collected vast quantities of water which heretofore had flowed in other directions, and thereby caused the waters to be collected in the reservoir and rise to an abnormal height, and to flow back upon the lands of the plaintiffs, causing permanent injury thereto and to their crops thereon.

Counsel for the defendant insist that the case falls within the rule announced in *City Oil Works* v. *Helena Improvement District No. 1,* 149 Ark. 285, 232 S. W. 28, 20 A. L. R. 296, where it was held that a landowner whose property is left outside of a levee is not entitled to damages because of the failure to protect his land or because the levee, as constructed, may prevent water from flowing off of his land as it otherwise would, or may deepen the water in an overflow of the land between the embankment and the river. We do not think the principles there announced have any application. When lands are left on the outside of a levee, they would be flooded from an overflow in the river whether a levee was constructed or not, and the construction of the levee would only serve to hold the water on the lands longer or to make it deeper, and this damage is not the direct but an indirect cause from the construction of the levee; and because levees are constructed to do the greatest good to the greatest number and because the damages are remote and consequential,

there can be no recovery. In such cases the courts hold that there is no invasion of the rights of property. In that case, however, the court recognized that damages produced by independent causes other than being left outside the levee may still be recovered.

Counsel also rely on the case of *McCoy v. Plum Bayou Levee District*, 95 Ark. 345, 129 S. W. 1097, to sustain their contention that there was no liability. In that case the landowners organized an improvement district to construct levees with the avowed purpose of confining the waters within the bed of the stream. The object was to prevent the water from overflowing the adjacent lands. The landowners did not obstruct the flow of the waters in the stream, but merely built a levee to protect their lands from overflow. In the present case the levee and drainage district included dams and levees which obstructed the natural flow of the water, and caused it to flow back upon the lands of the plaintiff to their permanent injury. *Taylor v. Steadman*, 143 Ark. 486, 220 S. W. 821.

Finally, it is insisted that the complaint shows on its face that the cause of action is barred by the statute of limitations. We do not agree with counsel in this contention. The complaint alleges that during the months of June and July, 1928, the defendant by the construction of said levees and their reservoir obstructed the flow of the waters, and impounded the same in said reservoir to so great an extent as to cause them to flow back and completely submerge the lands of the plaintiffs and to destroy the crops thereon. The original complaint was filed on July 16, 1928, and the amended complaint on December 17, 1928. Thus, it will be seen that the complaint does not show that the cause of action was barred.

Inasmuch as the judgment must be reversed and the cause remanded for further proceedings, we will decide what statute of limitations is applicable. Counsel for the plaintiffs claim that § 6950 of the Digest which provides that all actions for trespass on lands shall be

brought within three years after the cause of action shall accrue. On the other hand, counsel for the defendant claims that § 3942 of the Digest applies. This section provides that all actions for the recovery of damages against any levee or drainage district for the appropriation of land or the construction or maintenance of other levees or drains shall be instituted within one year after the construction of such levees or drains. This is a special statute limiting the time when such actions may be brought against levee and drainage districts, and, although it was passed before the enactment of the statute under which the present district was organized, yet it was in its terms very broad and comprehensive, and applies to all drainage districts which may hereafter be created whether under special or general acts, where no other statute of limitations is provided. See *Young v. Red Fork Levee Dist.*, 124 Ark. 61, 186 S. W. 604; and *Board of Directors of St. Francis Levee Dist.* v. *Home Life & Accident Co.*, 176 Ark. 558, 3 S. W. (2d) 967.

Therefore, the judgment will be reversed, and the cause will be remanded with directions to the circuit court to overrule the demurrer, and for further proceedings according to law. It is so ordered.