DRAINAGE DISTRICT No. 16 OF MISSISSIPPI COUNTY
*v.* ROUSE.

4-6592                                  158 S. W. 2d 261

Opinion delivered February 2, 1942.

*Shane & Fendler,* for appellant.

*Claude F. Cooper* and *T. J. Crowder,* for appellee.

SMITH, J. In the summer of 1939, Drainage District. No. 16 of Mississippi county, Arkansas, redredged its ditches. One of these was a lateral ditch referred to as ditch No. 7. The district redug the bottom of this ditch to a width of 20 feet for a mile. The width was then reduced to 16 feet for the next half-mile, and further reduced to 12 feet for the next mile, and finally narrowed to an eight-foot bottom for the remainder of the distance.

Appellee purchased a 40-acre tract of land in 1932. Ditch No. 7 was its eastern boundary. A county road ran east and west along his south boundary line. He built a house and barn in the northeast corner of his field near the ditch and facing it and used a road on the old dump of the ditch as a means of ingress and egress to the county road.

The redigging of ditch No. 7 was a drag-line job, and after a considerable portion of it had been dug, appellee filed suit to enjoin the enlargement of the ditch, its bottom through appellee's land having been widened from 16 to 20 feet. He obtained a restraining order enjoining the district "from throwing on or piling dirt upon plaintiff's lands and crops growing thereon and plaintiff's houses." In the complaint upon which this order was made he prayed judgment for damages in the sum of $600.

The machine employed was a dry-line model, operating a crane not long enough to place the earth, as it was removed, on the opposite side of the ditch, so the earth was piled along the right-of-way on the side where the machine was being operated. Some of the earth was thrown beyond the right-of-way upon appellee's cotton crop.

The practice was that the drag-line operator would apply a drag-line finish, that is, he would level and smooth the dump with the dipper used in excavating. The land owner could then cultivate the dump, and many farmers cultivated to the edge of the ditch.

After the injunction was obtained the district ceased spreading the earth and began piling it in a ridge. There is a conflict as to the width of the dump, and as to the height of the ridge, and as to the extent to which earth had been thrown on appellee's land and the damage to his crop. The testimony was also conflicting as to whether the entire work through appellee's land had resulted in damage or in benefit to the land. Some witnesses testified that the land had been damaged as much as $600; others said that the value of the land had been enhanced. The court found: "That this is an action for injunction and for damages growing out of an alleged trespass on the lands of the plaintiff; that the defendants did commit a trespass upon the lands of the plaintiff by spreading the dirt from the redug ditch, lying just east of his land, from the south line of his land northward for a distance of 700 feet and at a width of from 45½ to 50½ feet; that the district did not commit trespass when it stopped building the larger levee toward the northward and moved over and placed the dirt on its own right-of-way, and in building the smaller levee from about opposite the north end of the larger levee on to the north line of plaintiff's land; that plaintiff is entitled to damages against the defendants in spreading the dirt over on his land from his south line northward for 700 feet, as hereinbefore specified, and for damage to plaintiff's growing crop, in the sum of $375."

Upon this finding judgment was rendered for appellee in the sum of $375, from which decree is this appeal.

This suit offends the theory upon which drainage districts are organized and their cost assessed against the lands lying within a district. The theory of the law is that these ditches enhance the value of the land, and against this enhanced value, or betterment, as it is called, assessments are levied to pay the construction cost. Pro-

vision is made in the law for the maintenance of these ditches, and for the assessment of additional benefits to provide funds for that purpose.

In the course of time these ditches fill up, and must be redredged, and that is what happened here. But it does not appear that the district levied additional assessments to pay the cost of the redredging. Certainly, the district was not trying to damage appellee's land, but to benefit it, and we think the preponderance of the testimony shows this was done. The district would have spread the earth as the ditch was cleaned out and enlarged through appellee's land, as other landowners preferred, but when appellee objected and enjoined the district he had his choice, and thereafter the earth was piled in ridges and not spread out. We think the preponderance of the testimony shows that the benefits to appellee's land exceeded the damage done, and he, therefore, has no cause of action on that account.

It appears, however, that the district covered up some of appellee's cotton, and for this we think he should be paid. Appellee testified that the district covered up about an acre of his cotton, which would have produced a bale, worth $50, and judgment for that amount will be awarded him, and the judgment appealed from will be reduced to that amount.