St. Francis Drainage District *v*. Austin.

5-1082                                                    296 S. W. 2d 668

Opinion delivered December 17, 1956.

[Rehearing denied January 14, 1957.]

*Cecil Grooms* and *Kirsch, Cathey & Brown,* for appellant.

*Oscar Fendler* and *J. W. Steinsiek,* for appellee.

Sam Robinson, Associate Justice. This is a suit by appellees for damages to crops caused by the appellant, St. Francis Drainage District, using poison known as 2,4-D to kill willows growing on the drainage ditch right-of-way. Some of the poison drifted through the air and came in contact with some of the crops being grown by the appellees on land adjoining the drainage ditch. The cause was tried to a jury and there were verdicts totalling about $15,000 for appellees. The Drainage District has appealed.

The cause was submitted to the jury on the theory of whether the farmers, appellees, were entitled to recover under Article 2, Section 22, of the Constitution of Arkansas. The court instructed the jury as follows:

"Gentlemen of the jury, the plaintiffs, Austin, Reese, Riggs, Brown, Wells, Kitchen Farms Company, and Barnes bring this cause of action against the defendant St. Francis Drainage District to recover compensation for crops which they allege were taken or damaged for public use by the defendant Drainage District. The defendant Drainage District denies that said property was taken or damaged for public use within the meaning of the law applicable to this type of proceedings.

"You are instructed that Section 22, Article 2, of the Constitution of Arkansas reads: 'The right of property is before and higher than any constitutional sanction; and private property shall not be taken, appropriated or damaged for public use, without just compensation therefor.' You are further instructed that the St. Francis Drainage District is legally required to maintain the drainage ditches in its drainage system and the law has given this district the right to take private property, if necessary, to perform maintenance work upon its ditches. Therefore, if you find from a preponderance of the evidence in this case that the action of the St. Francis Drainage District was necessary and proper and if you further find that the Drainage District or its employees in doing this maintenance work acted without negligence, and that while so acting or maintaining said ditches, it was necessary to actually take or damage property belonging to the plaintiffs for public use, then your verdict will be for the plaintiffs.

"On the other hand, you are told that a drainage district cannot be held liable for the damage caused by the negligence of its agents and employees. Therefore, if you find that the damage, if any, sued for by the plaintiffs resulted from the negligence of the agents or employees of the Drainage District, you are instructed that none of the plaintiffs whose damage, if any, was caused

by such negligence, can recover against the Drainage District."

The appellant contends that Article 2, Section 22, of the Constitution has no application because the crops were not damaged "for public use"; that the cause of action sounds in tort, and that, therefore, there can be no recovery against the Drainage District.

Appellees do not claim that the District is liable in tort. They say no tort was committed; that the jury so found; but they contend that the crops were damaged for public use, and, for that reason, the damage is compensable under Article 2, Section 22, of the Constitution. It is true the jury found that there was no negligence on the part of the District, its agents or servants. But, the poison was not intentionally sprayed on the crops, and there is no evidence that in spraying the willows, on the Drainage District right-of-way, it was inevitable that some of the poison would drift over onto the crops. In fact, it appears that the poison was used by the District in the years 1950 to 1953, inclusive, with practically no damage. There was just one small claim of $15.00 during those years; the appellees claim their crops were damaged in the year 1954.

It would be stretching the imagination to the breaking point to say that the District used the crops or used the land on which the crops were growing. By a process of elimination justified by the jury verdict, and the undisputed evidence, the poison must have drifted on the crops accidentally. This does not constitute a use of the crops by the District within the meaning of the Constitution. It would be entirely unreasonable to say that under the law of this State the District is *not* liable if its agents, servants and employees negligently permitted poison to get on the crops, but that the District *is* liable if the poison used by the District got on the crops accidentally. To say that the District would be liable for such an accident, would be to say that the District would be liable if one of its trucks accidentally ran into another car and damaged it.

Appellees have cited many Arkansas cases in their excellent brief, but, in our opinion, none of the cases sustain their position, bearing in mind that appellees' crops were not intentionally, inevitably, or negligently damaged, and the damage was not of a permanent nature. *Hot Springs Railway Co.* v. *Williamson,* 45 Ark. 429, was a suit for damages by a property owner against a private corporation for injury to private property caused by the construction of a railroad embankment down the center of a street. The injury to the Williamson property was of a permanent nature, and whatever was done cannot be said to have been accidental in any sense of the word.

*McLaughlin* v. *City of Hope,* 107 Ark. 442, 155 S. W. 910. This case went off on a demurrer which admitted the property involved had been rendered unsuitable for the operation of a mill due to the discharge of sewage in a stream used by the mill in its operation. The court said: "Since the City's action in constructing its sewer system so as to turn the sewage into said branch indicates an intention to acquire a permanent right to continue to use it and pollute the stream, the damages to the owner should be assessed upon that basis and as though the city were proceeding to acquire it under its power of eminent domain."

*Hogge* v. *Drainage District No.* 7, 181 Ark. 564, 26 S. W. 2d 887. A demurrer admitted the lands had been damaged for public use. Land had been flooded and the owner was entitled to compensation. The flooding of the land amounted to a taking, and the court emphasized the fact that the damage was of a permanent nature. Again and again in this case, the permanent feature of the damage is stressed; the court said: "There can be no doubt that obstructing a navigable or nonnavigable flowing stream and thereby flowing the water back upon the land of another is such damage as entitles the owner to compensation . . . If the levee and drainage district does not concede that damages will result from the construction of the improvement, an action for damages may be brought by the landowner, when the

improvement is constructed, to determine the question whether his lands will be permanently injured, and, if so, to recover the damages.'' Referring to a United States Supreme Court case, the court said: ''The finding of the court was that it was not a case of temporary overflow but a condition of permanent injury from recurring overflows . . . Under the allegations of the complaint, the injury to the land was not temporary, but permanent . . . The levee and drainage district included dams and levees which obstructed the natural flow of the water, and caused it to flow back upon the lands of the plaintiff to their permanent injury.''

*Sharp* v. *Drainage District No.* 7, 164 Ark. 306, 261 S. W. 923. There, it is pointed out that a landowner may recover for the flooding of his land. The damage was of a permanent nature, and part of his land was taken. It went off on demurrer. *Keith* v. *Drainage District No. 7 of Poinsett County,* 183 Ark. 384, 36 S. W. 2d 59. This is a flooding case, a permanent condition. The same case was again before the court in 185 Ark. 553, 48 S. W. 2d 236. *Road District No. 6 of Lawrence County* v. *Hall,* 140 Ark. 241, 215 S. W. 262. The land was actually taken and used. Public use is stressed. *Campbell* v. *Arkansas Highway Commission,* 183 Ark. 780, 38 S. W. 2d 753. It was held that a property owner is entitled to recover for permanent damage done to his property by the construction of a bridge. No accident was involved. *Miller Levee District No. 2* v. *Wright,* 195 Ark. 295, 111 S. W. 2d 469. There was an actual taking plus permanent damage in the construction of a levee. Public use was present. *Sain* v. *Cypress Creek Drainage District,* 161 Ark. 529, 257 S. W. 49. Public use is involved. A permanent condition exists, and plaintiff's land is actually used for flooding.

Appellees rely heavily on *North Arkansas Highway Improvement District No. 1* v. *Greer,* 163 Ark. 141, 259 S. W. 380. The District was authorized to take land for borrow pits and this is what it did. There was an actual taking and use by the District. Another case upon which appellees place considerable emphasis is *Gray* v. *Doyle,*

167 Ark. 495, 269 S. W. 579. There, embankments were constructed by the Improvement District which caused the water to back up on the property owner's land, causing permanent damage. The embankments were built to protect the lower landowners and were a part of the plan in constructing the drainage district. Permanent damage is stressed.

Appellees contend that *Drainage District No. 16 of Mississippi County* v. *Rouse*, 203 Ark. 723, 158 S. W. 2d 261, is directly in point, but we do not think so. In that case, a strip of private property measuring some 45 1/2 to 50 1/2 feet by 700 feet adjacent to the drainage district right-of-way was actually used by the District on which to put dirt removed from a drainage ditch. The District deliberately and intentionally used the property owner's land on which to place the spoil from a ditch which was being dug.

When all is said and done, and regardless of what this cause of action may be called, it sounds in tort. The Drainage District did not use appellees' land or crops; certainly the poison was not intentionally sprayed on the crops. Moreover, the evidence shows that it is not impossible or impractical to spray the willows on the Drainage District Property without damaging crops on adjacent land. When the possibility of a cause of action for damages due to an intentional act or to an inevitable result of an intentional act is eliminated, and that is the situation we have here, there remains only the possibility of an action in tort.

There are many laymen, lawyers and judges who believe that, in all fairness, the State, its political subdivisions and *quasi* public corporations such as improvement districts created by the State, should be liable for torts committed. But the law, holding otherwise, has been firmly established for many years. *Wood* v. *Drainage District No. 2, Conway County*, 110 Ark. 416, 161 S. W. 1057; *Board of Improvement Sewer District No. 2* v. *Moreland*, 94 Ark. 380, 127 Ark. 469. In *Sewer Improvement District No. 1 of Sheridan* v. *Jones, Administrator*, 199 Ark. 534, 134 S. W. 2d 551, the court said: "If, when

and after the plant has been completed, it is so maintained or operated as to become a nuisance, relief must be obtained by suit to abate the nuisance.'' An action in tort would not lie. In *Jones* v. *Sewer Improvement District No. 3 of Rogers,* 119 Ark. 166, 177 S. W. 888, sewage was allowed to flow on adjacent property. The court held that an action in tort would not lie. Although the landowner had been damaged, injunction was the proper remedy.

Appellees' crops were not damaged for public use. The principles of eminent domain are not applicable, and, since under the law of this State an improvement district is not liable in tort, there can be no recovery. This conclusion may appear to be harsh, but it has been the law of this State for many, many years that neither the State, its political subdivisions nor *quasi* public corporations such as improvement districts, are liable in tort. Neither the General Assembly nor the people have seen fit to change the law in that respect, and it should not be done by this court.

Reversed and dismissed.

Justices HOLT and MCFADDIN dissent.