Steven ARD, a Minor, who sues by and
through his mother and next friend,
Ann Ard, Plaintiff in Error,

v.

OKLAHOMA CITY, a Municipal Corporation,
Defendant in Error.

No. 40089.

Supreme Court of Oklahoma.

May 21, 1963.

Rehearing Denied June 18, 1963.

John H. Kennedy, Oklahoma City, for plaintiff in error.

Roy H. Semtner, Municipal Counselor, James G. Hamill, Assistant Municipal Counselor, Oklahoma City, for defendant in error.

JOHNSON, Justice.

This is an action for the recovery of damages for personal injuries sustained by plaintiff in error, a boy of eight. He seeks recovery from the City of Oklahoma City on the theory of an attractive, dangerous condition maintained by the City in Lincoln Park. The City had permitted a fallout shelter to be erected in such park. The door at the entrance way to the underground area was slanted at an approximate angle of 30°. This door was attached by metal hinges and bolts holding same, both of which protruded above the surface of the door.

The petition alleges that plaintiff, while waiting to visit said shelter, was using the shelter door as a slide, and while sliding down the shelter door with the other boys, his body became turned and his face passed over the protruding metal bolts and hinge flanges, severely cutting his face and causing him to be permanently disfigured; that the defendant was negligent in that it knew or should have known that the door resembled a slide and that being easily accessible to children would constitute an attractive and alluring object to young children; that defendant knew or should have known that the shelter door was inherently dangerous because of the unprotected condition of the protruding metal hinge flanges and bolts; that defendant negligently failed to warn or caution the plaintiff; that defendant negligently permitted plaintiff and other boys to be present at the shelter door

in the absence of defendant's employees to prevent their use of the door as a slide; that defendant negligently failed to properly inclose the area surrounding the shelter door.

The defendant demurred to the plaintiff's petition, and the trial court sustained the demurrer. The plaintiff elected to stand on his petition, whereupon same was dismissed, and plaintiff appealed.

Plaintiff contends first that under a liberal construction and all reasonable inferences, the petition stated a cause of action; second, that the maintenance of a public park is a proprietary rather than a governmental function, thereby making the defendant liable for any negligent action in the operation, maintenance and supervision thereof; and, third, the city was not required by law to build a fallout shelter in its park, and if it did it must maintain it so that small children using the park would not be exposed to danger therefrom.

■ We deem it necessary to consider only plaintiff's second proposition, supra. As an abstract proposition, the statement contained in this contention is correct. See City of Sapulpa v. Young, 147 Okl. 179, 296 P. 418.

A reading of this case discloses that where a facility is maintained for the pleasure, amusement and recreation of the citizens, it is held in a proprietary rather than in a governmental capacity. The situation here is entirely different. The construction and operation of a fallout shelter is in the interest of public safety and defense.

These shelters have been erected by the federal government pursuant to the Civil Defense Act of 1950, as amended. The declaration of policy in respect thereto is contained in 50 U.S.C.A.Appendix, § 2251, as follows:

"It is the sense of the Congress that the defense of the United States, in this thermonuclear age, can best be accomplished by enacting into law the measures set forth in this Act (sections 2251–2297 of this Appendix). It is the

policy and intent of Congress to provide a system of civil defense for the protection of life and property in the United States from attack. It is further declared to be the policy and intent of the Congress that the responsibility for civil defense shall be vested jointly in the Federal Government and the several States and their political subdivisions. The Federal Government shall provide necessary direction, coordination, and guidance; shall be responsible for the operation of the Federal Civil Defense Administration as set forth in this Act (sections 2251–2297 of this Appendix); and shall provide necessary assistance as herein authorized. As amended Aug. 8, 1958, Pub.L. 85–606, § 2, 72 Stat. 532."

Some of the duties of the Federal agency were set forth in 50 U.S.C.A.Appendix, § 2252(b) (3) (A), which included:

"* * * the construction or preparation of shelters, shelter areas, and control centers; * * *."

While some jurisdictions have held all functions of a municipality to be governmental, and therefore there is no tort liability on the part of municipalities (Abernathy v. City of Columbia, 213 S.C. 68, 48 S.E.2d 585; Plaza v. City of San Mateo, 123 Cal.App.2d 103, 266 P.2d 523; St. Francis Drainage Dist. v. Austin, 227 Ark. 167, 296 S.W.2d 668; this jurisdiction has always recognized the distinction between governmental and proprietary functions insofar as tort liability is concerned. See Ashburn v. Oklahoma City, 192 Okl. 46, 134 P.2d 365; Chism v. City of Tulsa, 192 Okl. 366, 136 P.2d 409; City of Tulsa v. Wheetley, 187 Okl. 155, 101 P.2d 834, and City of Ardmore v. Hendrix, Okl., 348 P.2d 497.

■ Ordinarily, it might be necessary for the court to determine whether the function exercised in this case was governmental or proprietary. However, such is not necessary here. In 63 C.J.S. Municipal Corporations at page 39, the headnote to § 751 reads:

"Subject to constitutional limitations, the legislature has control over the liability to which a municipal corporation may be subjected for tort."

In the matter of civil defense, the legislature of Oklahoma has enacted two statutes which control in the present situation.

63 O.S.1961 § 674(a) reads:

"All functions hereunder and all other activities relating to civil defense are hereby declared to be governmental functions. The provisions of this section shall not affect the right of any person to receive benefits to which he would otherwise be entitled under this Act, or under the Workmen's Compensation Law, or under any pension law, nor the right of any such person to receive any benefits or compensation under any act of congress. Any municipal fireman or policeman engaged in any civil defense activities, while complying with or attempting to comply with this Act or any rule or regulation pursuant thereto, shall be considered as serving in his regular line of duty and shall be entitled to all benefits of any pension fund."

63 O.S.1961 § 675, reads:

"Any person owning or controlling real estate or other premises who voluntarily and without compensation grants a license or privilege or otherwise permits the designation or use of the whole or any part or parts of such real estate or premises for the purpose of sheltering persons during an actual, impending, mock, or practice attack shall, together with his successors in interest, if any, not be civilly liable for negligently causing the death of, or injury to, any person on or about such real estate or premises for loss of, or damage to, the property of such person."

These sections establish two things:

■ 1. That the erection of a fallout shelter, even though built by the city, a fact not established, is a governmental function.

2. That the owner of the real estate where a shelter is erected is specifically exempted from all civil liability for personal injury.

We hold these two statutes to be conclusive of non-liability in the case at bar. This being true, consideration of the remaining contentions of plaintiff is unnecessary. The demurrer to the petition was properly sustained, and the action properly dismissed.

Judgment affirmed.