The Honorable Owen Miller State Representative 602 Liberty Marked Tree, AR 72365
Dear Representative Miller:
This is in response to your request for an opinion with regard to the liability of the Arkansas Game and Fish Commission ("Commission") in relation to the operation of a gated control structure. You state that the Commission operates a gated control structure located south of the St. Francis Lake, and that this structure partially controls the water level in and around the area of the lake. Your specific question is as follows:
 Since the operation of the Gated Control Structure is controlled by the Arkansas Game and Fish Commission, what is their liability concerning flood and crop damage on private lands which are located inside the St. Francis River floodway System?
It is my opinion that the Commission, its officers and its agents will not be held liable in a tort action for damages allegedly resulting from negligence in connection with operation of the control structure. This follows from the principle that the State of Arkansas, its officers and its agents cannot be made defendants in any of its courts. Const. Ark. Art. 5, 20; Tri-B Advertising v. Ark. State Hwy. Comm'n, 260 Ark. 227, 539 S.W.2d 430 (1976). It should also be recognized that officers and employees of the State of Arkansas are immune from civil liability for acts or omissions, other than malicious acts or omissions, occurring within the course and scope of their employment, in accordance with Arkansas Code of 1987 Annotated 19-10-305. A remedy may potentially be had in the State Claims Commission. See A.C.A.19-10-101, et seq. Officers and agents of the Game and Fish Commission will not, however, incur any personal liability for their nonmalicious acts. See, e.g., Beaulieu v. Gray, 288 Ark. 395,705 S.W.2d 880 (1986); Carter v. Bush, 283 Ark. 16,677 S.W.2d 837 (1984). The success of any action maintained individually against Commission officers or agents would, of course, involve factual questions to be resolved by the judiciary under the particular facts of each case.
A different question may be posed if the damages fall within the category of those which are necessary and incidental to the taking of property for public use. Such an action would be premised upon the State's obligation to provide compensation for the taking of private property for public use. Const. Ark. Art. 2, 22. Factors to be considered in this regard would include the nature and cause of the damages. The inquiry would in all likelihood center upon whether the damages were permanent and recurring, resulting intentionally and by necessity from operation of the gated control structure. See, e.g., Hogge v. Drainage District No. 7, 81 Ark. 564,26 S.W.2d 887 (1930); St. Francis Drainage District v. Austin, 227 Ark. 167, 296 S.W.2d 668 (1956); Ark. Hwy Comm'n v. Steed Steed, 241 Ark. 950, 411 S.W.2d 17 (1967). Questions may also arise regarding any applicable statute of limitations, see, e.g., A.C.A. 14-120-217, as well as the extent of flooding that occurred prior to construction of the control structure as compared to any flooding resulting from operation of the structure. The ultimate issue of whether the property was damaged for public use will turn on all of the specific facts and circumstances.
While it is therefore apparent that your question cannot be conclusively answered in the absence of a particular set of facts, we hope that the foregoing offers general guidance in addressing the issue.
The foregoing opinion, which I hereby approve, was prepared by Assistant Attorney General Elisabeth A. Walker.