INDIAN  BAYOU  DRAINAGE  DISTRICT  *v.*  WALT.

Opinion delivered June 26, 1922.

1. DRAINS—NEW DRAINAGE CANAL NOT AUTHORIZED.—A new and independent drainage canal exceeding in cost the whole system originally contemplated and completed was an improvement so extensive and so different from that originally planned that it would have to be accomplished through the formation of a new district, and not as an extension of the canal as originally constructed nor as a widening or deepening of the ditch already completed.

2. DRAINS—RIGHT TO ALTER PLANS.—Where a drainage district was organized under Crawford & Moses' Dig., § 3607 *et seq.*, and the work completed, any plan of improvement thereafter contemplated would be a new plan, and not the original plan altered and changed, and no authority is conferred by § 3625, *Id.*, to file or change plans after the work originally contemplated has been completed.

Appeal from Lonoke Chancery Court, *John E. Martineau,* Chancellor; affirmed.

*Chas. A. Walls,* for appellant.

Drainage districts continue to exist for the purpose of preserving the same, keeping the ditches clear from obstruction, and for extending, widening or deepening the ditches as may be found advantageous. Sec. 3630, C. & M. Digest. The commissioners may at any time alter the plans of the ditches and drainage. Sec. 3625, C. & M. Digest. The court has held under the drainage act then in force that the county court might establish a ditch on a different route from that mentioned in the petition when it was better and less expensive to do so. 64 Ark. 555. The alternative drainage system did not repeal the other drainage laws, and drainage districts can be established under either system. 126 Ark. 518.

*Clifton Gray* and *Murphy, McHaney & Dunaway,* for appellees.

The commissioners have power to alter the location of the ditches at any time before constructing the work. Sec. 3625, C. & M. Digest; 91 Ark. 30; *Id.* 79; 147 Ark. 546.

Section 3630, C. & M. Digest, applies only where the item of expense is small, such as cleaning out the ditches. But where the change involves heavy expense the property owner is entitled to be heard.

WOOD, J.  The appellees, who were landowners in the Indian Bayou Drainage District of Lonoke County, Arkansas (hereinafter called district) instituted this action against the district and its commissioners.  Appellees alleged that the district was established in September, 1912, under act No. 279 of the Acts of 1909 and the amendments thereto; that the commissioners, under the authority of the general drainage laws, constructed a drainage system twenty-five miles in length, consisting of a main canal and many laterals leading into same; that the benefits to the lands in the district were assessed and bonds issued and sold in the sum of $147,000, and that taxes were levied and collected and were still being collected from the landowners of the district; that in December, 1921, the commissioners filed with the clerk of the county court of Lonoke County what was called "report of board of commissioners on changes in plans, and plans for extending, deepening, widening, straightening, cleaning, and otherwise improving the system of drainage in said district, and transmitting plans, specifications and estimates of the cost of the proposed work," in which it is proposed to construct an additional canal generally paralleling Old Indian Bayou main canal from the point where lateral 8 of the original drainage system enters Snow Brake, through said brake, thence in a southeasterly direction through the lowlands lying west of Indian Bayou main canal, and across the main canal on the east line of said section 1, at a point south of the quarter section line, and to construct an additional outlet through the old channel of Indian Bayou at a point about one thousand feet south of the village of Tomberlin, where the banks of the Indian Bayou are very steep and the channel well defined.  It is alleged that the proposed improvement will cost the landowners, in addi-

tion to the taxes already levied in said district, a sum of from one hundred and fifty to two hundred thousand dollars, and that it is contemplated that the commissioners will reassess the benefits and call on the county court to levy additional taxes to cover the cost of making the proposed improvement. The appellees further alleged that the proposed improvement is for the digging of another main canal of more than five miles in length within the boundaries of the district. It is alleged that the county court is without jurisdiction to make the improvement in the manner proposed; that the canal proposed would be of no benefit to the lands in the district, but, on the contrary, would result in great damage, and would be a taking of appellee's property without due process, in violation of sec. 22, art. 2 of the Constitution of the State, and of the Constitution of the United States.

The appellees prayed that the appellants be enjoined from taking any further steps in the proposed proceedings. Attached to the complaint as an exhibit is a copy of a map or blue-print showing the boundaries of the district, with the location of the ditches already constructed and the proposed changes.

The appellants demurred to the complaint on the following grounds: First, that the complaint does not state facts sufficient to constitute a cause of action; second, that the court has no jurisdiction of the subject-matter; and third, that the plaintiffs have an adequate remedy at law.

At the hearing on the demurrer the court sustained the demurrer to all parts of the complaint "except that part relating to the contruction of a parallel ditch indicated on the map as from stations 'A' to 'O', and over-ruled the demurrer as to that part of the complaint. The court entered a decree restraining the commissioners from constructing the additional canal as shown on the copy of the blueprint from stations 'A' to 'O'," From that decree is this appeal.

Section 22 of act No. 279 of the Acts of 1909, digested as sec. 3630, C. & M. Digest, reads as follows: "The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstruction and of extending, widening, or deepening the ditches from time to time, as it may be found advantageous to the district. To this end the commissioners may from time to time apply to the county court for the levying of additional taxes. Upon the filing of such petitions, notice shall be published by the clerk for two weeks in a newspaper published in each of the counties in which the district embraces lands, and any property owner seeking to resist such additional tax levy may appear at the next regular term of the county court and urge his objections thereto, and either such property owners or the commissioners may appeal from the finding of the county court."

Section 2 of act No. 177 of the Acts of 1913, digested as sec. 3625, C. & M. Digest, reads as follows: "The commissioners may at any time alter the plans of the ditches and drainage, but, before constructing the work according to the changed plans, the changed plans, with accompanying specifications, showing the dimensions of the work as changed, shall be filed with the county clerk, and notice of such filing shall be given by publication for one insertion in some newspaper issued and having a *bona fide* circulation in each of the counties in which there are lands belonging to the district. If, by reason of such changes of plans, either the board of commissioners or any property owners deem that the assessment on any property has become inequitable, they may petition the county court, which shall thereupon refer the petition to the commissioners hereinbefore provided for, who shall reassess the property mentioned in petition, increasing the assessment if greater benefits will be received, and allowing damages if less benefits will be received or if damages will be sustained. In no event shall a reduction

of assessments be made after the assessment of benefits has been confirmed, but any reduction in benefits shall be paid for as damages, and the claim for such damages shall be secondary and subordinate to the rights of the holders of bonds which have heretofore been issued. From the action of the commissioners in the matter the property owners shall have the same right of appeal that is herein provided for in the case of the original assessment.''

The appellants invoke the above sections of the digest of the drainage laws as authority for the proposed improvement. It will be observed that sec. 3630, *supra,* provides that the district, after the completion of the improvement for which it was created, shall continue to exist for the purpose, among other things, of ''extending, widening, or deepening the ditches from time to time, as may be found advantageous to the district.'' Additional taxes are authorized for such purpose.

The allegations of the complaint, which the demurrer admits to be true, are that the proposed improvement is for the digging of another main canal of more than five miles in length within the boundaries of the present Indian Bayou Drainage District which was established many years ago and completed; and further, ''that the board of commissioners * * * * is now seeking to construct and put into operation at an estimated cost of from one hundred and fifty to two hundred thousand dollars an entirely new and independent drainage canal practically parallel to the Indian Bayou main canal.'' An examination of the map which is brought into the record showing the location of the proposed canal from stations ''A'' to ''O'' confirms the admitted allegation of the complaint that the proposed canal which the commissioners now propose to dig is not an extension of the canal originally constructed, nor a widening or deepening of the ditches that were already completed, but is in very truth, as alleged and admitted, a new and independent drainage canal. It is a new improvement not in the nature of extending, widening, or deepening the ditches that had

been constructed according to the plans originally contemplated in the formation of the district. Specific authority for making an improvement of this character must be found in the law, and it is impossible to find in the language of sec. 3630, *supra,* giving the words "extending, widening, or deepening," their plain and natural meaning, any authority for the construction of a new and independent improvement such as is shown by the facts of this record.

Sec. 3630, *supra,* clearly confers upon the commissioners of the drainage district created thereunder the power to preserve the drainage system, after the same has been completed as contemplated, by keeping the ditches clear from obstruction, and the power to extend, widen and deepen the same. But certainly these words cannot be stretched in meaning so as to confer power upon the commissioners to construct a new and independent drainage canal, which, according to the admitted facts, would exceed in cost the whole system of drainage originally contemplated and completed. An improvement so extensive and so radically different from that originally planned and completed, however expedient and desirable, would have to be accomplished through the formation of a new district or subdistrict. Secs. 3570, 3650, C. & M. Digest. At any rate, such improvement cannot be effectuated under the guise of "extending, widening, or deepening" the ditches already constructed. The canal here proposed is not incidental to the original drainage system, but is itself original and independent. It is too wide a departure from the original drainage system to be embraced within the authority conferred upon the commissioners to "extend, widen, or deepen" the ditches. See *Rayder* v. *Warrick,* 133 Ark. 491; *Hout* v. *Harvey,* 135 Ark. 102; *Carson* v. *Rd. Imp. Dist.,* 150 Ark. 379; *Higginbotham* v. *Road Imp. Dist., ante* p. 112.

To give the county court jurisdiction to make such an improvement, the procedure would have to be inaugurated by property owners in the manner pointed out in

the statute, and not by the commissioners of an already created district. Secs. 3607-3608, C. & M. Digest. The district was organized in September, 1912, under the alternative system of drainage districts. Secs. 3607 *et seq.* Sec. 3625, *supra,* under that system, providing that the commissioners may at any time alter the plans of the ditches and drains, has no application here, for the reason that that section contemplates that the commissioners may alter or change the plans of the ditches or drains before the drainage system contemplated by the creation of the district has been completed. Obviously, after the original drainage system contemplated in the creation of the district has been completed, it would be a contradiction in terms to say that thereafter the commissioners would have the power to alter the plans. After the original plans had been carried out, of course it would be too late to alter same. Any plan of improvement thereafter contemplated would necessarily be a new plan, and not the original plan altered or changed.

Here the record shows that the original drainage district organized in 1912 began the work for which it was created in the year 1913 and completed the same in the year 1916. In December, 1921, about five years thereafter, the commissioners filed with the clerk of the county court of Lonoke County a report called "Report of board of commissioners on changes in plans, and plans for extending, deepening, widening, straightening, cleaning, and otherwise improving the system of drainage in said district." Sec. 3625, *supra,* expressly authorized the commissioners to alter the plans of the ditches and drains before constructing the work for which the district was organized. But there is no authority conferred under this section to file plans, or change plans, after the work originally contemplated has been completed. See *Protho* v. *Williams,* 147 Ark. 535, 546.

The decree of the court therefore, overruling the demurrer to the allegations of the complaint which set up the construction of a new drainage canal from stations

"A" to "O," and restraining the commissioners from inaugurating proceedings looking to the completion of the proposed canal, is in all things correct, and it is affirmed.