CLAY *v.* ENGLAND.

Opinion delivered December 13, 1926.

DRAINS—CONSTRUCTION OF ADDITIONAL OUTLET.—Where a new canal was proposed to furnish an outlet for a drainage system, which outlet was not available until after the drainage improvement, organized under Crawford & Moses' Dig., § 3607 *et seq.*, had been completed, it was not an extension of a canal originally constructed nor a widening or deepening of ditches that were originally completed, and therefore was not authorized by § 3630, *Id.*

Appeal from Lonoke Chancery Court; *John E. Martineau,* Chancellor; reversed.

*Ben B. Morris,* for appellant.

SMITH, J. The Keo-England Drainage District No. 4 of Lonoke County was organized in 1917 under act 279 of the Acts of 1909 (§§ 3607 *et seq.*, C. & M. Digest) and the acts amendatory thereof. The district embraces about 15,000 acres of land, and the benefits assessed totaled $143,970, against which bonds were sold to the amount of $65,000, the proceeds of which were used in paying the construction costs of the improvement. All the construction work contemplated by the original plans, upon which the assessment of betterments was based, was completed in 1919, and no work has been done since that time, except to clean out the canals.

The principal drainage canal begins at the corporate limits of the town of Keo, and extends in a southeasterly direction to the boundary line between Lonoke

and Jefferson counties, where it empties into Wabbaseka Bayou. This canal is about seven miles long. In addition, there are certain laterals emptying into the main canal, having a combined mileage of about eight miles, so that the total length of all the canals of the district amounts to fifteen miles.

After the completion of the improvement, it became apparent that the outlet provided in the Wabbaseka Bayou was insufficient to take care of the water which the various canals carried and emptied into the Wabbaseka Bayou, as a result of which certain lands in the district are frequently overflowed in the spring, during planting time. As a result of this condition, the improvement has not given the expected relief. On the contrary, considerable land in the district is damaged by the improvement rather than benefited by it, as was contemplated and as would have been the case had the outlet proved sufficient.

At the time the original plans were adopted Wabbaseka Bayou was the only available outlet, and was thought to be sufficient, but, from the completion of the improvement, this outlet has been found to be inadequate. Since the completion of the canals a part of the headwaters of Plum Bayou, which runs along the west boundary of the district, have been diverted into the Arkansas River, as a result of which the high-water mark of this bayou has been so lowered that it has been ascertained, by a survey made for that purpose, that this bayou may also be used for outlet purposes for the drainage district, thus diminishing the quantity of surface water carried and poured into Wabbaseka Bayou.

The facts stated are shown both in the report of the district's engineer and in his testimony given at the trial from which this appeal comes.

After the engineer had made his survey and report, showing that an additional outlet was available, the commissioners of the district filed a petition with the county court of Lonoke County praying an order authorizing the levy of additional taxes upon the lands of the

district to pay the construction cost of the additional outlet into Plum Bayou, and, after due notice to the landowners, the petition was heard and granted.

Thereupon appellant, who is a landowner in the district, brought this suit in the chancery court of Lonoke County to enjoin the commissioners of the district from proceeding with the construction of the new canal, alleging that the county court was without jurisdiction to authorize it.

Under the original plan, a lateral numbered 2 in the northern part of the district ran into the main canal, and it is now proposed to construct the additional outlet from a point in this lateral to Plum Bayou. This new canal would be about 2½ miles long, and the estimated cost of the extension is $14,685. It is proposed to issue additional bonds to construct this additional canal, but its cost, added to the cost of the original improvement, would not exceed the betterments originally assessed.

The answer filed by the commissioners admitted all the allegations of the complaint except one, to the effect that the proposed additional canal constitutes an original and independent construction work, but alleged, on the contrary, that this canal was incidental and essential to the original drainage system, and thus, unless constructed, the money already expended would be largely wasted.

The cause was submitted upon the pleadings and the testimony of the engineer. This testimony was to the effect that the main canal's outlet was never adequate, but was the only one available when the plans for the improvement were made, and that, because of the inadequate outlet, a large body of land in the district not only derives no benefit from the improvement, but, on the contrary, is greatly damaged by the overflowing of the canal. His testimony establishes the fact that an additional outlet may now be had by constructing an additional canal draining into Plum Bayou, as stated above.

The court found, from the testimony of the engineer, that the proposed additional canal is incidental and essential, and not original and independent, to the original drainage system, and that its construction was authorized by the drainage law. The complaint of appellant was dismissed as being without equity, and he has appealed.

The proceeding whereby the county court authorized the construction of an additional canal was had under § 3630, C. & M. Digest, and the question for decision is whether that section of the statute conferred jurisdiction on the county court to make the order authorizing this work.

This section of the statute was § 22 of the drainage acts of 1909 (Acts 1909, page 829), and reads as follows: "The district shall not cease to exist upon the completion of its drainage system, but shall continue to exist for the purpose of preserving the same, of keeping the ditches clear from obstructions, and of extending, widening or deepening the ditches from time to time as it may be found advantageous to the district. To this end the commissioners may, from time to time, apply to the county court for the levying of additional taxes. Upon the filing of such petitions, notices shall be published by the clerk for two weeks in a newspaper published in each of the counties in which the district embraces lands, and any property owner seeking to resist such additional levy may appear at the next regular term of the county court and urge his objections thereto, and either such property owners or the commissioners may appeal from the finding of the county court."

This section of the drainage act was thoroughly considered in the case of *Indian Bayou Drainage District* v. *Walt*, 154 Ark. 335, 242 S. W. 575, in which case the commissioners of the drainage district sought to construct an additional canal and outlet. In that case it is recited that the canal which the commissioners proposed to dig was not an extension of the canal originally constructed pursuant to the plans of the district, nor was it a widening

or deepening of the ditches that were already completed. What was there said is equally true here of the proposed new outlet. It was not a part of the plans of the district; on the contrary, it affirmatively appears that the purpose of the new canal is to furnish an outlet which was not available when the original plans were made and approved, on which the assessment of benefits was based, nor did this outlet become available until after the improvement had been completed.

In the Indian Bayou case, *supra,* it was said that "specific authority for making an improvement of this character must be found in the law, and it is impossible to find in the language of § 3630, *supra,* giving the words 'extending, widening, or deepening,' their plain and natural meaning, any authority for the construction of a new and independent improvement  *  *  *." It was there further said that this section of the statute conferred power upon the commissioners to preserve the drainage system after it had been completed, but that no power was conferred to construct a new and independent drainage canal.

The construction given § 3630, *supra,* in the Indian Bayou case was reaffirmed in the case of *Bayou Meto Drainage District* v. *Ingram.* 165 Ark. 318, 242 S. W. 575. In that case the plans were amended to afford an additional outlet for drainage, and it was contended that this could not be done, once the plans had been made and the assessment of benefits confirmed. After stating that authority was conferred by the statute to make such changes in the plans as were found necessary to afford drainage to the lands in the district after the approval of the plans and the confirmation of the assessment, it was said: "Viewing the statute in that light, we think that the language of the sections referred to is sufficient to authorize a change of plans and an extension of the boundaries at any time before the completion of the improvement as originally planned, and that if, at any time before that point is reached, it is found that the scheme will prove abortive unless there be an extension,

and that other lands will be benefited by such extension, further proceedings may be had to that end."

It was there further said: "If the statute authorizes the change of plans and extension of boundaries, after the approval of the original plans and the assessment of benefits, then it follows that it may be done at any time before the improvement is completed, for there is no other period in the proceedings at which the authority may be limited."

It thus appears that, while authority is conferred to make changes in the plans of the improvement (subject to the duty to reassess betterments to conform thereto), when such changes are found necessary as the work progresses, this authority is at an end, when the plans, original or revised, have been executed.

So here, while the testimony of the engineer shows the necessity for the new outlet to make the proposed improvement a success and to afford the relief contemplated in the organization of the district, it is also shown with equal certainty that this new canal was no part of the plans of the district as originally approved or subsequently revised, and the proceeding in the county court for its construction was not instituted until after the district was a completed project.

The proposed outlet may be necessary and the project without it may be unsuccessful, but this proves only that the original plans, pursuant to which the improvement was constructed, were defective; but this affords no authority, under the statute quoted, as construed in the cases cited, to dig an additional canal after the plans have been fully completed.

It follows therefore that the court was in error in dismissing the complaint of appellant, and the decree is reversed, with directions to grant the relief prayed.