TRI-COUNTY DRAINAGE DIST. *v.* MORRISON.
EAST ST. FRANCIS DRAINAGE DISTRICT No. 1 *v.*
TRI-COUNTY DRAINAGE DISTRICT.

5-930; 5-931                              295 S. W. 2d 781

Opinion delivered December 3, 1956.

30

No. 5-930. *Henry S. Wilson, Rieves & Smith,* for appellant;

*Norton & Norton, E. J. Butler,* and *Mann & McCulloch,* for appellees.

No. 5-931. *Norton & Norton, E. J. Butler & Mann & McCulloch,* for appellants;

*Henry S. Wilson* and *Rieves & Smith,* for appellees.

PAUL WARD, Associate Justice. These two cases were consolidated for trial in the court below, and they were consolidated in this court for the purposes of briefing and presentation, although there is only a slight connection between the two of them. In this opinion we find it more convenient to discuss each case separately.

## CASE NO. 930

In order to understand the issue presented by this appeal it is necessary to make a brief background state-

ment. Appellant, Tri-County Drainage District, was organized in 1914 embracing lands in Crittenden County, Cross County, and St. Francis County. The drainage construction was completed about 1916, and all bonded indebtedness was retired several years ago. In 1947 the Legislature passed Act 371, sometimes referred to as the Separation Act. Generally speaking this Act permitted a county in the original district to withdraw therefrom and exist as a separate district. Section 1 of said Act 371 (Ark. Stats. § 21-577) provided for the separation of a county from the original district when the original district had "no outstanding unpaid bonds or other evidences of indebtedness." Section 3 of said Act 371 (Ark. Stats. § 21-579) sets forth how this separation may be effected. In this section one of the showings that must be made by the county seeking to withdraw or separate is "that all *obligations* of the district have been paid in full." (emphasis supplied.)

A few years ago St. Francis County withdrew from the original Tri-County Drainage District under the provisions of said Act 371, and now exists as East St. Francis District No. 1.

This litigation was instigated by appellees who were residents of Crittenden County and landowners of that county in the original district, who sought to withdraw from the original district in accordance with said Act 371.

It is not disputed that the original district has no outstanding unpaid bonds or any other evidences of indebtedness, except that contended for by appellants as hereafter set out.

After a hearing in the Circuit Court of Crittenden County, the presiding judge granted the separation asked for, and appellants have appealed.

It is the contention of appellants that appellees were not entitled to invoke the provisions of said Act 371 because they were unable to make the showing required

by Section 3 thereof as heretofore set out. This contention on the part of appellants is based on the following situation: At the time the present litigation was instituted there was already pending before the same court the litigation involved in Case No. 931. In the latter case the testimony shows that the commissioners of the original district had attempted to obligate the district to pay its attorney a fee of $3,500 and its engineer a fee of $3,500. The conclusion reached by appellants, therefore, is that the original district has "obligations" which have not been paid in full.

We are not in agreement with the above contention made by appellants. We note, first, that appellees take the position that the two items of "indebtedness" mentioned above are not established claims against the district, but that said items are merely a contingent claim pending on the outcome of the litigation in Case No. 931. We make no effort to resolve this dispute between appellants and appellees, but base our conclusion herein on another ground.

We think Section 1 of Act 371 of 1947 (Ark. Stats. § 21-577) is controlling in this case relative to the kind of indebtedness from which the district must be free before Crittenden County (in this instance) will be permitted to separate. The section referred to above sets forth the condition relative to indebtedness under which a county is entitled to be separated from the original district. The condition there stated is that the original district shall "have no outstanding unpaid bonds or other evidences of indebtedness . . ." Section 3 of Act 371 of 1947 (Ark. Stats. § 21-579) sets forth the procedure for effecting a separation. This section, among other things, provides that the petitioners must show "that all obligations of the district have been paid in full . . ." It is clear to us that this section must be read and construed in connection with Section 1 of said Act 371, and that it refers to the kind of indebtedness therein mentioned. It further appears that the language used in said

Section 1 was not meant to include the kind of indebtedness relied on here by appellants, to-wit: The attorney and engineering fees. It is obvious that such indebtedness or fees cannot be classified as "outstanding unpaid bonds," nor does it appear logical to us that they should be classified as "evidences of indebtedness." The adoption of the appellants' contention would practically amount to a nullification of Act 371 of 1947, because it would always be easy for the original district, if it so desired, to keep itself at all times obligated for some small unpaid bill. It is not reasonable to suppose that the Legislature, after setting up the separation provisions contained in said Act 371, meant to leave open such an easy method of defeating its purposes.

It is our conclusion, therefore, that the trial court was correct in permitting Crittenden County to separate from the original district, and its action in so doing is affirmed.

## CASE NO. 931

This litigation began on February 22, 1955 when the commissioners of Tri-County Drainage District filed a petition, pursuant to Ark. Stats. § 21-533 and § 21-581, asking for a levy of taxes against the lands in the three counties comprising the original district for the purpose of doing certain work on the drainage system. Preparatory to the filing of this suit the commissioners hired an engineer, Mr. C. H. Bond, to prepare a set of plans detailing the work to be done. The litigation was resisted by the East St. Francis District No. 1 and certain landowners in those portions of the district which lie in St. Francis and Crittenden Counties. The trial court, after hearing much testimony relative to the nature of the work proposed, deleted large portions of the engineer's plans and approved the levy of taxes as to the remaining portion.

The St. Francis District and the said landowners have appealed from the judgment of the trial court and

the Tri-County District has cross-appealed, contending that the original plans of the engineer's should have been approved by the court.

A brief statement of facts presenting the background to this litigation will help to understand the issues presented on this appeal. Tri-County Drainage District (hereafter referred to as Tri-County) was organized in 1914 under the provisions of Act 279 of 1909 (Ark. Stats. § 21-501, et seq.) comprised of lands in Crittenden, Cross and St. Francis Counties. The drainage system, completed in 1916 at a cost of approximately $800,000, is quite extensive, consisting of so-called main canals together with numerous laterals, and drains in a southerly direction from Crittenden County through Cross and St. Francis Counties, and empties into the St. Francis River. A few years ago the landowners in that portion of the original district lying in St. Francis County, as mentioned previously, secured a separation from the district.

A careful reading of Act 279 of 1909 under which Tri-County was organized and of Act 371 of 1947 reveals, generally speaking, that after a county is separated from the original district the portion of the original district lying in the separated county can elect its own commissioners and function as a separate and independent district for the purpose of maintaining the ditches in that county, etc., and that thereafter the original district has no power to impose assessments on the lands in the separated portion *except* that power which it retains or is granted under a provision contained in Section 5 of said Act 371 (Ark. Stats. § 21-581). This provision reads as follows: ". . . the Circuit Court in which the original district was organized shall have authority to cause to be levied and collected a tax on all the lands of the original district for the purpose of paying the expenses *incident to the cleaning out (but not for the purpose of extending, widening or deepening) existing ditches so as to provide an adequate outlet for*

*the entire drainage system of the original district."*
(emphasis supplied.) It is admitted that the original
district was organized in the Circuit Court of Critten-
den County. Again, generally speaking, much of the
dispute in this litigation revolves around the correct in-
terpretation of the above quoted passage.

Appellants ably and earnestly insist that the deci-
sion of the trial court levying an assessment on all the
lands in the original district should be reversed for five
different reasons, to-wit: 1. The notice of hearing was
defective; 2. The project is not authorized by Ark.
Stats. § 21-533; 3. The order of the trial court violates
Act 371 of 1947 (Ark. Stats. § 21-577, *et seq.*); 4. The
project is not feasible, and; 5. The burden of proof
has not been met by the petitioners.

1. *Notice.* Ark. Stats. § 21-533 pursuant to which
the petition herein was filed, provides: "Upon the fil-
ing of such petition, notice shall be published by the clerk
for two (2) weeks in a newspaper published in each of
the counties in which the district embraces land, . . ."
It is not disputed in this case that a notice was published
for the time provided by said statute, setting forth the
date on which "any property owner in the original Tri-
County Drainage District seeking to resist such addition-
al levies may appear and urge his objections thereto."
Appellants' objection to this notice is that it does not
give the description of each parcel of land in the district
or describe the boundaries of the district. It is our opin-
ion that this objection is not well taken. We are dealing
here with a district that has already been organized and
not with the creation of a new district. Section 21-533
above mentioned is a part of the Act under which the
original district was organized, and the first part of this
section specifically states that "the district shall not
cease to exist upon the completion of the drainage sys-
tem but shall continue to exist for the purpose of pre-
serving the same, of keeping the ditches clear from ob-
struction, and of extending, widening or deepening the

ditches from time to time as it may be found advantageous to the district." It must be noted of course that appellees contend that the court's order merely goes to "keeping the ditches clear from obstruction" and cleaning them out, and not to extending or widening, etc. If appellees are correct in this view, then we can see no objection in the form of notice used in this case. Upholding their contention that the notice was not good appellants cite *Mahan* v. *Wilson*, 169 Ark. 177, 273 S. W. 383; *Crane* v. *Siloam Springs*, 67 Ark. 30, 55 S. W. 955, and; *Cox* v. *Drainage District No. 27 of Craighead County*, 208 Ark. 755, 187 S. W. 2d 877. The first two cited cases dealt with the formation of new districts, and the last cited case dealt with the digging of new and additional ditches and are therefore not controlling in this case. It was said in the *Crane* case that "It is important that this notice should be given in the manner and within the time prescribed by the statute; . . ." We think that has been done in this case.

2. It is next contended by appellants that the work sought to be done by the petitioners is not authorized by Ark. Stats. § 21-533. It seems that appellants must admit, because it is so stated in said section, that the original district is authorized to levy assessments for the purpose of preserving the drainage system and keeping the ditches clear from obstruction. They contend however that the work contemplated by the commissioners herein (as approved by the court) amounts to additional work which is not authorized by said section, and therefore governed by Ark. Stats. § 21-520 which requires a petition filed by a majority in numbers, acreage and value of the owners of the land within the district. Appellants rely on the opinion in the *Indian Bayou Drainage District* v. *Walt*, 154 Ark. 335, 232 S. W. 575, where it was held that the commissioners had no right under Section 21-533 to do the proposed work. The work there however was quite different from the work here contemplated, as the language of the court shows. It was said by the court in that case: "The proposed canal which

the commissioners now propose to dig is not an extension of the canal originally constructed, nor widening or deepening of ditches that were already completed, but it is in very truth . . . *a new and independent drainage canal."* (emphasis supplied.) If, therefore, the work approved by the court in this case on the drainage system amounts to a "new and independent drainage canal," or even (in view of the restrictive language in Act 371 of 1947) such work amounts to more than preserving the drainage system and cleaning out the ditches the trial court should be reversed, but if the contemplated work as approved by the court amounts only to preserving the drainage system and cleaning out the ditches we must hold to the contrary. As stated before the extent of the work authorized is one of the principal points of the controversy and is to be considered later.

3. The argument that the order of the trial court violates Act 371 of 1947, presented by East St. Francis District No. 1, rests on two points, one of which, at least, is difficult to resolve with complete satisfaction. These points are: (a) Whatever power the Circuit Court of Crittenden County has to levy a tax upon the lands in the East St. Francis District No. 1 can be exercised only upon petition by the commissioners of that district, and not upon a petition by the commissioners of the original district, and; (b) the work authorized by the trial court in this case extends further than cleaning out ditches "so as to provide an adequate outlet for the entire drainage system."

(a) Assuming for the sake of argument, at this point, that the work authorized by the trial court amounts only to cleaning out and preserving the proper ditches, then it appears clear to us that the commissioners of the original district are the proper parties to instigate this litigation. That the commissioners of a drainage district, such as Tri-County Drainage District, are the proper and legally authorized parties to look

after its affairs and institute and control litigation of the district admits of no argument. Section 22 of Act 279 of 1909 (Ark. Stats. § 21-533) specifically provides that "the District shall not cease to exist upon the completion of its drainage system, but shall continue to exist . . ." for certain purposes. This existence of the District was not terminated by Act 371 of 1947. On the other hand Section 5 of said Act 371 (Ark. Stats. § 21-581) specifically provides "that the Circuit Court in which the original district was organized (the Circuit Court of Crittenden County) shall have authority to cause to be levied and collected a tax on all the lands of the original district . . ." for certain purposes. It is true that the first portion of Section 5 of said Act 371 provides that after the separation of a county the power of the original district to levy a tax on the land in the county so separated for the purposes provided in Ark. Stats. § 21-533 shall cease, yet the same section later qualifies this in the manner stated above. It makes no difference therefore whether the power granted to the original district and to the Circuit Court of Crittenden County be treated as a reservation of power in the original district or whether its a power granted under the provisions in Section 5 of said Act 371. If the commissioners of East St. Francis District No. 1 were the only ones who could invoke the jurisdiction of the Circuit Court of Crittenden County it would lead to a novel situation. Section 5 of Act 371 gives the Circuit Court of Crittenden County the authority to levy a tax not only on the lands in St. Francis County but on the lands in Cross and Crittenden Counties, and it is unreasonable to believe that the Legislature meant to give the commissioners in the first mentioned county control over the affairs of the last mentioned counties. If the occasion arose where work needed to be done in all three of the counties then, under appellants' contention, St. Francis County could prevent it by merely refusing to act. It is true, of course, if the St. Francis District desired to levy a tax on its own landowners, its own commissioners could

properly take the initiative. It is our conclusion therefore that the commissioners of the original district were the proper parties to instigate this litigation.

(b) The next contention by appellants, that the work authorized by the trial court extends further than cleaning out ditches so as to provide an adequate outlet for the entire drainage system, presents the principal question on this appeal, and, as stated above, it is a difficult one to resolve. Any authority which the original district or the Circuit Court of Crittenden County has to levy a tax on the lands in St. Francis County which were in the original district is contained in the last portion of Section 5 of said Act 371. That power must have been used by the Circuit Court of Crittenden County (in the language of the statute) ''for the purpose of paying the expenses incident to the cleaning out (but not for the purpose of extending, widening or deepening) existing ditches so as to provide an adequate outlet for the entire drainage system of the original district.'' So, we agree with appellants that the trial court must be reversed if the work approved by it either (b-1) amounts to more than a ''cleaning out process,'' as the quoted words are properly interpreted, or (b-2) in including more ditches than necessary to provide an adequate outlet for the entire drainage system of the original district, as that phrase is properly interpreted.

Before attempting to resolve the issues above designated as (b-1) and (b-2), it is pertinent here to view as a whole the intent and purpose of the statutes involved, and particularly Section 21-581 of Ark. Stats. The purpose of any drainage system, of course, is to drain water off land to make it productive. To effect this purpose a drainage system must be kept cleaned out so it will function. In most systems, and particularly the Tri-County District, there are so-called main ditches and lateral ditches, although the distinction may sometimes be hard to make or define. When the Legislature passed Act 371 (Section 5 of which is Ark. Stats. § 21-581) it was cog-

40

nizant of the extent and nature of the Tri-County District and also of the things we have just mentioned. From this we deduce, generally, that the intent of the Act was to permit a separate county to handle its own affairs insofar as possible, but, realizing the importance to the entire district of the main canals, chose to place the burden of their maintenance on it, and not on the individual counties, leaving to the latter (when separated) the burden of maintaining lateral ditches. The burden placed on Tri-County District therefore was to effectuate the above general purpose, and, in doing so, we cannot believe the Legislature meant to give it an impossible task or to restrict it with technicalities that would defeat the general purpose of the Act. In other words as we view Act 371 it is impracticable of application unless a reasonable latitude of discretion and judgment is allowed the courts and the commissioners of Tri-County District.

(b-1)   Viewed in the above light, we have concluded that the work approved by the trial court amounted to no more than a necessary ''cleaning out process'' of the ditches.   The engineer, Bond, admitted that his plans called for a slope of 1-1/2 to 1 for some of the ditches when the Ayers' plans called for a 1 to 1 slope.   However it must be remembered that these ditches were dug nearly 40 years previously and had never been cleaned out.   Erosion over this period had changed the banks, and we must assume in the absence of proof to the contrary, that Bond's plan was the most feasible and economical.   We can see no justification in spending more money merely to restore the original ditches to a mathematical certainty.   In this connection we have considered other objections raised by appellants — such as that some ditches are being widened — but they fall in the general classification of the one previously discussed, and none of them justify a reversal, in our opinion.

(b-2)   Likewise we conclude that the evidence supports the trial court's order designating the main ditches to be cleaned out, and, in particular, that it does not include more ditches than necessary "to provide an adequate outlet for the entire drainage system of the original district."

Although, as heretofore mentioned, the commissioner's original plans called for work amounting to approximately $400,000 on a large number of ditches, the trial court approved work amounting to approximately $130,-000 on some 6 or 7 ditches which, for lack of use of a better word, we will call main or principal ditches.   The court in its order designated in minute detail the ditches which he approved.   It will suffice, we think, to describe these ditches in a general way, and in doing this we refer to one of the exhibits which is a map of the entire drainage system showing all of the ditches in the original district.   The first ditch begins at approximately the north side of the district in Blackfish Bayou in Section 2, Township 7 North, Range 5 East and thence in a southerly direction along said Bayou for a distance of approximately 8 miles; the second ditch apparently begins at the south end of Blackfish Bayou and runs southwest and thence west for approximately 3 miles to where it enters into Blackfish Lake; the third ditch leads from the west side of Blackfish Lake at a point approximately 3 miles from the north end thereof and runs west and southwest for a distance of approximately 2 miles; the 4th and 5th ditches appear to be a continuation of the third ditch and continue in a southwesterly direction to the outlet of the drainage system for a distance of several miles; the 6th ditch empties into Blackfish Lake on the east side thereof and extends east approximately one mile and a half to join with other ditches; the 7th ditch apparently drains Shell Lake running from the southeast end thereof for a distance of approximately one mile to the south and empties into ditch No. 3 described above, and; there is another ditch which apparently runs due north and south for a dis-

tance of approximately a mile and enters into ditch No. 7 on the north side. The numbers which we have given to these ditches were not so numbered in the court's order.

The difficult question presented therefore is whether the trial court misinterpreted the meaning of the provision in Section 5 of Act 371, copied above, and included more ditches than were authorized by said Act. To illustrate that there are grounds for different views of the meaning of this section, we note that while appellants feel that too many ditches were included yet appellees, on cross-appeal contend, that not enough ditches were included. In presenting the view that too many ditches were included in the court's order appellants draw an analogy between the "adequate outlet for the entire drainage system" to the main outlet for the sewer system of a house, stating that the latter "is the final house-sewer or drain from the point where it has received the last water from the minor drains serving the numerous fixtures higher in the system." From this analogy, we take it, appellants contend that the trial court should have included only the southern-most portion of the main ditch which empties into the St. Francis River, and that it should have excluded all of the above numbered ditches except possibly 4 and 5. This we think is a strained and unreasonable construction of the language of the statute referred to above when we consider the drainage district as a whole and the purpose for which it was constructed. Under the narrow construction it appears clear to us, from a view of the map referred to above, that large portions of the lands in the northern part of the district in Crittenden and Cross Counties would not be properly drained. After giving careful consideration to the language in Section 5 of said Act 371 (Ark. Stats. § 21-581) copied above, we are forced to the conclusion that the Legislature did not intend to limit the original district to cleaning out only the southern-most portion of the main drainage canal, but rather to give the original district full power and

authority to clean out all of the (existing) ditches necessary, not only to provide an adequate outlet, but an adequate outlet for the entire drainage system. We are convinced this could not be done under the construction insisted on by appellants.

While the question under consideration has not heretofore been before this court, we did have occasion in the case of *Park Corporation of Arkansas* v. *Tri-County Drainage District*, 226 Ark. 357, 290 S. W. 2d 18, to consider said Act 371 in many of its aspects. We said there "that the spirit if not the exact manner of the statute gives Tri-County District the power to levy assessments against appellants' lands in St. Francis County (along with all of the other lands in the other two counties which are embraced in the district) to pay the expenses of 'cleaning out' an obstruction or obstructions in the main ditch or canal *even though said obstructions are in Cross or Crittenden Counties.*" (emphasis supplied). Even though it might be urged that the above was *dictum* in the cited case, yet our judgment with respect thereto is the same now as it was then.

It is objected that Jeka Slough was not a part of the Ayers' plan but is in the plans prepared by Mr. Bond. That may be true but we do not find that it was approved by the court. Attention is called to the fact that the court approved the "cleaning out" of Blackfish Bayou, and that it was no part of the original plans. This seems to be true, but we do not think it calls for a reversal of this case. The map referred to above shows that part of the original system drained into the north end of Blackfish Bayou and out at the south end into a main canal. This Bayou was not shown as a part of the original plans because no work was done on it. Nevertheless it appears to be an important link in the drainage system. It is now (after 40 years) full of trees and debris and must be cleaned out before the water from the canal north of it can reach the final outlet.

(4 & 5)   We are not convinced by appellants' argument that the project is not feasible.   This again is a matter that must be left largely to the discretion and good judgment of the commissioners and the trial court as above indicated.   It may be that when this project is completed the drainage system may not function entirely satisfactorily.   Even Mr. Bond admits this possibility.   But if that be the case, the fault must lie, not so much with the poor judgment or abuse of power by the courts, as with the inherent difficulties in adjusting the applicable statutes to the existing situation.   It appears also that there is a probability that within the next 8 or 10 years the Federal Government will do part of the proposed work at a saving to the landowners, but we are unable to say the court and the commissioners acted unwisely in refusing to wait on that eventually happening.

In view of what we have said heretofore, we deem it unnecessary to discuss further the burden of proof. Appellees have, we think, produced sufficient evidence to sustain the action of the trial court, and it is hereby affirmed.

In affirming the trial court on direct appeal we have already set forth reasons from which it follows that appellees' cross-appeal must be denied.

Affirmed on direct appeal and cross-appeal.

Justice McFADDIN dissents in part.